[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 15, 2003
THOMAS K. KAHN
CLERK

No. 00-16199

D. C. Docket No. 00-00003-CR-WDO-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY JERNIGAN,
WENDELL NELSON,

Defendants-Appellants.

Appeals from the United States District Court
for the Middle District of Georgia

**(August 15, 2003)**

Before BIRCH and MARCUS, Circuit Judges, and FULLAM[*], District Judge.

MARCUS, Circuit Judge:

---

[*]Honorable John P. Fullam, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

These direct criminal appeals stem from the November 7, 2000 convictions of appellants Randy Jernigan and Wendell Nelson, each on one count of being a felon in possession a firearm, in violation of 18 U.S.C. § 922(g). Although appellants were tried together, their claims on appeal are largely distinct, with only one substantive claim being advanced by both Jernigan and Nelson. In the end, we conclude that no claim advanced by either appellant is meritorious, and accordingly we affirm their convictions in all respects.

I

On April 15, 1998, Jernigan was driving a type of tow truck known as a "wrecker" with Nelson riding in the passenger seat when the vehicle was pulled over by police in Macon, Georgia for having an expired license plate tag. Officers questioned Jernigan, quickly learned that he was driving with a suspended drivers' license, and arrested him. Although Jernigan initially gave the officers a false name, they found a driver's license bearing his picture and true name. After running a background check, the officers learned that Jernigan was a convicted felon. Incident to this arrest, the officers searched the vehicle, which, instead of individual bucket seats, had a single padded bench with a cushioned back support that traversed the width of the truck's cab. Stuffed between the back of the seat and the bench the

2

officers found a loaded .380 semi-automatic pistol wrapped in a red bandanna.[1] Upon discovering this weapon the officers showed it to Nelson, who spontaneously exclaimed that he was on probation and that the weapon was not his. The officers took Nelson into custody as well.

Once they had returned to the station, the officers again questioned Nelson about the gun. He reiterated that it was not his, and explained that Jernigan, upon realizing that he was being pulled over, had removed the gun from his pants, wrapped it in a red bandana and placed it between the seat and the backing where it was subsequently found. Nelson also repeated his statement that he was on probation. Indeed, on October 15, 1994, Nelson shot another person from inside a car, which led to an April 7, 1995 aggravated assault conviction in the Superior Court of Bibb County, Georgia. Subsequently, on November 5, 1996, he was convicted in the same court of possession of a firearm by a convicted felon. This latter conviction stemmed from an August 20, 1996 incident in which Nelson was a passenger in a car that was stopped by Macon police officers for traffic violations. When the vehicle was searched, officers found a shotgun on the floorboard of the back and two handguns under the front seat, as well as cocaine.

---

[1]One of the arresting officers specifically described the pistol as being "stuck down within the seat . . . it was stuck completely through the seat and you could just see a bulge."

Jernigan also was a convicted felon, and as such was legally barred from possessing a firearm. Specifically, he had been found guilty on February 22, 1985 of violating Georgia's Controlled Substance Act. Subsequently, on June 19, 1997, Jernigan was convicted of being a felon in possession of a firearm in the Superior Court of Monroe County, Georgia. In that case, Jernigan had been stopped at a sobriety checkpoint when a Sheriff's deputy spotted a loaded Smith and Wesson semi-automatic pistol tucked into the seat. Although he gave the deputy a false name, Jernigan's true identity was quickly revealed, as was his status as a felon, and he was arrested.

After a delay of approximately one year and nine months following their initial arrest (and their subsequent release), Jernigan and Nelson both were charged in this case with being felons in possession of a firearm, in violation of 18 U.S.C. § 922(g), and were arraigned on March 29, 2000. On April 21, 2000, the government notified Jernigan and Nelson that it intended to introduce evidence of their prior bad acts pursuant to Fed. R. Evid. 404(b), and on April 28, 2000 Nelson filed a motion in limine to preclude the admission of such evidence. Then, on September 20, 2000, Nelson moved to dismiss the indictment based on an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161. The district court denied this motion, and the case proceeded to trial on November 6, 2000.

At trial, pursuant to a stipulation among both defendants and the government, tapes of Nelson's two statements inculpating Jernigan, i.e., his spontaneous exclamation when first showed the weapon and his subsequent, formal statement at the police station, were played for the jury. The government also introduced Jernigan's June 19, 1997 conviction for being a felon in possession of a firearm, Nelson's November 5, 1996 conviction for this same offense[2] and Nelson's April 7, 1995 aggravated assault conviction.[3] Because these offenses all involved the knowing possession of a firearm, the district court deemed them admissible under Fed. R. Evid. 404(b) to establish appellants' knowledge that the weapon was present in the cab of Jernigan's truck, and it charged the jury that no propensity inference could be drawn from them. Although Jernigan objected to the presentation of this "prior bad acts" evidence, Nelson did not.

In addition, the government introduced the testimony of Deputy Marshall Brad Bennett, one of the officers who had arrested Jernigan on February 11, 2000 on a warrant based on the indictment in this case. As noted, there was a lengthy delay between appellants' initial arrest and their indictment, and during this time Jernigan

---

[2]The government did not, however, inform the jury that cocaine also was found in connection with this offense.

[3]The government did not, however, inform the jury that Nelson actually shot someone during the incident from which this conviction stemmed, but merely told the jury that Nelson had been convicted of a crime that involved the knowing possession of a firearm.

and Nelson were not in custody. Bennett told the jury that when he attempted to recapture Jernigan following the indictment, he spotted Jernigan's car leaving an Atlanta apartment complex. Although Bennett tried to stop the vehicle, Jernigan fled by backing the car the wrong way down a one-way street. Later that day Jernigan was found sitting on the front stoop of his apartment with the front door partially open. Incident to this arrest officers conducted a protective sweep of the apartment where they found an unloaded semi-automatic rifle, which Jernigan admitted to owning, and a 30-round magazine. Jernigan objected to the introduction of this evidence as well.

For his part, Jernigan was permitted to introduce evidence that Nelson was a member of the Bloods gang, and that this gang used the color red as a symbol of membership. In allowing the presentation of this evidence, the district court rejected Nelson's objection that the evidence of his gang membership was more prejudicial than probative of his guilt of the § 922(g) offense, and thus inadmissible under Fed. R. Evid. 403. Jernigan also introduced the testimony of Roger Stembridge, a probation surveillance officer who told the jury that an August 19, 1999 search of Nelson's residence -- the search having resulted from a probation violation -- yielded .380 caliber ammunition, the same as in the instant case and pictures of Nelson and other known gang members wearing the color red and flashing gang signs. This

6

testimony was corroborated by investigator Melanie Hoffman, who also testified that it is common practice for gang members to wrap their weapons in their own bandannas.

On November 7, 2000, the jury returned guilty verdicts against Jernigan and Nelson. On February 5, 2001, Jernigan was sentenced to 240 months imprisonment and Nelson was sentenced to 120 months imprisonment.

On February 1, 2001, Jernigan moved for a new trial based on what he deemed newly discovered admissions made by Nelson to Michael West, a fellow inmate. By West's account, Nelson admitted that the weapon found in Jernigan's truck belonged to him, and that he had placed the gun behind the bench seat without Jernigan's knowledge. West said that Nelson had told him that he (Nelson) was helping to convict an innocent man. West also stated that neither Jernigan nor defense counsel was aware of Nelson's admission until after the conclusion of the trial, when he wrote a letter informing the district court of the same. The district court denied this motion on August 1, 2001.

On appeal, Jernigan and Nelson both challenge their convictions on sufficiency of the evidence grounds, arguing specifically that the government failed to present evidence from which a reasonable juror could conclude that they knowingly possessed a firearm and that the district court erred by denying a motion for a

judgment of acquittal on this basis. Additionally, Nelson contends that the district court erred by (1) failing to dismiss the indictment in his case based on a Speedy Trial Act violation; (2) admitting evidence of his past crimes under Fed. R. Evid. 404(b); and (3) rejecting his challenge under Fed. R. Evid. 403 to the admission of evidence regarding his gang membership. Jernigan, in turn, contends that the district court erred by denying his motion for a new trial based on West's testimony and by admitting Nelson's two hearsay statements that the gun belonged to Jernigan.[4]

II

*A.    Appellants' Sufficiency of the Evidence Claims*

Although our review of the sufficiency of the evidence against appellants is de novo, see United States v. Anderson, 326 F.3d 1319, 1326 (11th Cir. 2003) (citation omitted), in making this determination we "view the evidence 'in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor.'" United States v. Ortiz, 318 F.3d 1030, 1036 (11th Cir. 2003) (quoting United States v. Miles, 290 F.3d 1341, 1355 (11th Cir. 2002)). In the end, "[a] jury's verdict will be affirmed 'if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt.'" Id.

---

[4]We note that neither appellant advances any claim that they were prejudicially joined in the same indictment or that they were wrongly tried together.

(quoting Miles, 290 F.3d at 1355). Moreover, as we have explained, we also "review de novo the district court's denial of a motion for judgment of acquittal, applying the same standard used in reviewing the sufficiency of the evidence, meaning that we view the facts and draw all inferences in the light most favorable to the Government." United States v. Descent, 292 F.3d 703, 706 (11th Cir. 2002) (citations omitted), cert. denied __ U.S. __, 123 S. Ct. 913, 154 L. Ed. 2d 820 (2003).

In this case, Jernigan and Nelson were convicted of violating 18 U.S.C. § 922(g), an offense that entails three distinct elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce. See United States v. Deleveaux, 205 F.3d 1292, 1296-97 (11th Cir. 2000) (citing United States v. Billue, 994 F.2d 1562, 1565 n.2 (11th Cir. 1993)). Although neither appellant contests the sufficiency of the evidence against him with respect to the first or third prong of this test, both claim that the government failed to present evidence that could convince a reasonable factfinder that he knowingly possessed the gun found in the cab of Jernigan's tow truck.

We disagree. Simply stated, there was ample evidence on which a reasonable jury could have based a conclusion that Jernigan and Nelson knowingly possessed the weapon found in the cab of Jernigan's truck. As for Jernigan, the government

9

established that he was the owner and operator of the vehicle in which the gun was found and that the pistol was hidden immediately next to the driver's "area" of the truck's bench seat. Moreover, a reasonable juror could have afforded credence to Nelson's out-of-court statements implicating Jernigan. It would have been equally reasonable to infer from the fact that Jernigan initially gave the arresting officers a false name that he was attempting to conceal his identity as a felon to avoid a prosecution for being a felon in possession of a firearm, and that this effort evidences a consciousness that Jernigan in fact possessed the gun found in his truck. Additionally, we have often noted the difficulty faced in establishing a defendant's state of mind. See, e.g., United States v. Manoocher Nostari-Shamloo, 255 F.3d 1290, 1292 (11th Cir.) ("A defendant's intent is often difficult to prove and often must be inferred from circumstantial evidence."), cert. denied 534 U.S. 1030, 122 S. Ct. 566, 151 L. Ed. 2d 440 (2001); United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir. 1991) ("We previously have noted the special difficulty of proving intent in conspiracy cases."). Here, the jury could have inferred from all the circumstances surrounding the initial stop, coupled with the fact that Jernigan previously and subsequently had committed acts requiring the same state of mind -- i.e., those that resulted in his June 19, 1997 conviction for being a felon in possession of a firearm

10

and his possession of weapons at the time of his February 11, 2000 arrest,[5] just shortly after he was indicted in this case for being a felon in possession of a firearm -- that Jernigan <u>knowingly</u> possessed the gun found in his truck.

As for Nelson, it was equally plausible for the jury to have concluded, based on the evidence presented, that it was Nelson who stuffed the weapon behind the bench seat, since he had just as much access to the area in question as did Jernigan. Moreover and quite notably, the gun was wrapped in a red bandanna, which could have convinced a reasonable juror that it belonged to Nelson, who, as stated, was a member of a street gang that used the color red as a symbol of membership. In addition, we have no doubt that a reasonable factfinder also could have concluded that Nelson <u>knowingly</u> possessed the weapon found in the truck -- i.e., he did not possess it by mistake or accident -- based on each of his prior convictions for aggravated assault and being a felon in possession, both of which involved the knowing possession of a weapon.

Thus, although a reasonable jury could have concluded that either Jernigan or Nelson did not knowingly possess the gun found in Jernigan's truck, the government presented sufficient evidence to permit a reasonable trier of fact to conclude

---

[5]As is more fully explained <u>infra</u>, the district court did not abuse its discretion or commit plain error by admitting evidence of these bad acts under Fed. R. Evid. 404(b).

11

contrarily. The district court did not err in denying appellants' motions for judgments of acquittal.

*B.    Nelson's Rule 404(b) Argument*

Nelson also contends that the district court erred by admitting evidence of his prior crimes under Fed. R. Evid. 404(b).[6] At the outset, we note that Rule 404(b) is a rule of inclusion, and that accordingly "404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994). Typically, in reviewing a properly preserved claim that the district court abused its discretion by admitting evidence of a defendant's prior bad acts under Fed. R. Evid. 404(b), we employ a three part test:

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there

---

[6]This rule provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, ... of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

12

must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

United States v. Miller, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc) (footnote and internal citations omitted); see also United States v. Zapata, 139 F.3d 1355, 1357 (11th Cir. 1998) (outlining the same test).

In this case, however, Nelson admits that he failed to object to this evidence before the district court, and accordingly we review its admission not for abuse of discretion but instead only for plain error. See United States v. Brazel, 102 F.3d 1120, 1151 (11th Cir. 1997) ("[T]he Rule 404(b) argument was not properly preserved and thus is reviewed for plain error only."); United States v. Williford, 764 F.2d 1493, 1502 (11th Cir. 1985) ("Evidentiary errors that are not specifically objected to at trial are reviewed for plain error."); Wilson v. Attaway, 757 F.2d 1227, 1242 (11th Cir. 1985) (to preserve objections to admissibility of evidence, objections must state specific grounds; otherwise, review is only for plain error). Under this standard, "[w]e correct only for errors that are particularly egregious and that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,' and then only when a miscarriage of justice would result." Williford, 764 F.2d at 1502 (internal citations and punctuation omitted); see also United States v. Gresham, 325 F.3d 1262,

13

1265 (11th Cir. 2003) ("Under the plain error standard, Gresham must show that: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." (citing United States v. Humphrey, 164 F.3d 585, 588 n.3 (11th Cir. 1999))).

In this case, to reiterate, the government introduced Nelson's April 7, 1995, conviction for aggravated assault and his November 5, 1996 conviction for being a felon in possession of a firearm, both of which involved the knowing possession of a firearm in a car. Under the first prong of the Miller test, these offenses plainly bore on Nelson's knowledge that the gun was present in this case. Indeed, the caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental). As we said in United States v. Gomez:

> Appellant's possession of a concealed firearm on a prior instance is relevant to a charge of possession of a firearm in his car while he sought to transport drugs. . . . Introduction of a prior conviction for carrying a concealed weapon helped the government establish that Gomez was aware of the dangers of and law relating to concealed weapons and rebut Gomez's claim that the gun was for an innocent purpose and its presence was mere accident or coincidence. The district court did not abuse its discretion in allowing such evidence.

14

927 F.2d 1530, 1534 (11th Cir. 1991) (emphasis added); see also United States v. Coleman, __ F.3d __ (3d Cir. 2003) ("Coleman put at issue during trial whether he had knowledge of, and thus possessed, the shotgun and narcotics found in the apartment in which he resided with Avery Coleman. The District Court admitted this evidence not to permit the prosecution to show Coleman's propensity to possess a firearm or narcotics, but instead 'as proof of . . . knowledge' of their presence in the apartment, a permissible purpose pursuant Rule 404(b)."); United States v. Cassell, 292 F.3d 788, 793 (D.C. Cir. 2002) (noting, in the context of a felon in possession case, that "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged'" (quoting United States v. King, 254 F.3d 1098, 1100 (D.C. Cir. 2001))); United States v. Moorehead, 57 F.3d 875, 878 (9th Cir. 1995) (holding that prior possession of a firearm is admissible to show knowledge in a prosecution for knowingly possessing a similar weapon); United States v. Pelusio, 725 F.2d 161, 167-68 (2d Cir. 1983) (holding that the introduction of evidence of previous instances in which the defendant had been present in an automobile with a shotgun were admissible "under Fed. Rules of Evid. 404(b)[] to show that his presence in the car with the shotgun [on the occasion in question] was intentional and not a mistake or

15

accident"); <u>United States v. Beechum</u>, 582 F.2d 898, 913 (5th Cir. 1978) (en banc) ("Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense, the evidence satisfies the first step under Rule 404(b).").

Against this doctrinal background, it is untenable to say that Nelson's previous, knowing commission of crimes that involved the possession of a weapon -- and specifically, the possession of a weapon in a car -- does not logically bear on his knowledge of the presence of a gun at the time Jernigan's car was pulled over.[7] Put simply, the fact that Nelson knowingly possessed a firearm in a car on a previous occasion makes it more likely that he <u>knowingly</u> did so this time as well, and not because of accident or mistake.

Importantly, because Nelson's prior crimes plainly bore on his knowledge that the gun was present in Jernigan's truck, the district court could by no measure have committed plain error by so concluding. Indeed, Nelson makes no showing that the district court's evidentiary ruling affected his substantial rights or that it somehow affected the fairness or integrity of the judicial proceedings.

---

[7]Significantly, by pleading not guilty, Nelson placed this element of the § 922(g) offense in issue.

16

The second <u>Miller</u> factor also is plainly satisfied, as "[i]t is elementary that a conviction is sufficient proof that [the defendant] committed the prior act." <u>United States v. Calderon</u>, 127 F.3d 1314, 1332 (11th Cir. 1997) (citing <u>United States v. Arambula-Ruiz</u>, 987 F.2d 599, 603 (9th Cir. 1993)). Here, the parties stipulated to Nelson's 1995 and 1996 convictions.

Finally, as we explained in <u>Calderon</u>, "[u]nder the third and final prong of our inquiry, the probative value of the evidence must not be <u>substantially outweighed</u> by unfair prejudice. . . . [T]his determination lies within the sound discretion of the district judge and calls for a 'common sense assessment of all the circumstances surrounding the extrinsic offense,' including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." 127 F.3d at 1332 (quoting <u>United States v. Beechum</u>, 582 F.2d 898, 914-15 (5th Cir. 1978)) (emphasis in original). We emphasize again that our task in this case is <u>not</u> to determine whether the evidence of Nelson's other crimes was more unduly prejudicial than probative. Instead, we ask only whether the district court committed plain error in concluding that this calculus tips in favor of admissibility.

As in <u>Calderon</u>, where we held that the Rule 403 calculus favored admissibility, in this case the other crimes evidence admitted by the district court "bore sufficient similarity to uphold the district [court's] relevance determination."

17

As explained supra, both Nelson's prior offenses and the instant offense involved the knowing possession of a weapon in an automobile. Moreover, the time span between Nelson's prior convictions and the present offense does not render those convictions "too remote for proper consideration." 127 F.3d at 1332. Specifically, Nelson's convictions came 2 and 3 years prior to the instant offense, which is well within the temporal bounds of relevance. See generally id. (holding that a six year span between the prior offense and the charged conduct did not render the previous conviction too remote to be relevant to the defendant's intent in the case then at bar).

In addition, in this case the district court gave the jury two separate limiting instructions regarding the impermissibility of considering Nelson's previous convictions as propensity evidence. See id. at 1333 ("[A]ny unfair prejudice that may have existed was mitigated by the district judge's limiting instruction."). Equally significantly, the district court was careful to preclude the admission of certain especially prejudicial aspects of Nelson's prior convictions, including that the 1995 aggravated assault conviction stemmed from the shooting of another person and that cocaine was found along with the weapon that led to his 1996 felon in possession conviction. Based on these considerations, we are satisfied that the district court did not err, let alone plainly err, in concluding that the probative value of this evidence

18

was not substantially outweighed by its prejudicial impact.  In short, the third prong

of the <u>Miller</u> test is satisfied here as well.

Although Jernigan has waived the Rule 404(b) claim that he properly preserved

at trial,[8] we note briefly that his claim would have been no more persuasive than the

---

[8]We do not believe that Jernigan can be fairly said to have appealed from the district court's Rule 404(b) ruling.  Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate, i.e., in a section of his brief that is demarcated by a boldface heading or by some equivalent notation.  At the very least, he must devote a discrete, substantial portion of his argumentation to that issue.  Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned.  <u>See</u> <u>Greenbriar, Ltd. v. City of Alabaster</u>, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) ("Although Greenbriar refers to the district court's dismissal of its amendment in its Statement of the Case in its initial brief, it elaborates no arguments on the merits as to this issue in its initial or reply brief.  Accordingly, the issue is deemed waived."); <u>Federal Sav. & Loan Ins. Corp. v. Haralson</u>, 813 F.2d 370, 373 n.3 (11th Cir. 1987) ("[I]ssues that clearly are not designated in the appellant's brief normally are deemed abandoned." (citing <u>Rogero v. Noone</u>, 704 F.2d 518, 520 n.1 (11th Cir. 1983) and 9 Moore's Federal Practice 228.02[2.-1], at 28-7 (2d ed. 1985)));  <u>Tedder v. F.M.C. Corp.</u>, 590 F.2d 115, 117 (5th Cir. 1979) (although raised in statement of issues, claim was deemed abandoned by appellant where it was not addressed anywhere else in the brief).

In this case, Jernigan's brief contains only four passing references to the evidence admitted under Fed. R. Evid. 404(b), each of which is embedded under different topical headings.  First, he entitles one minor subsection within his statement of facts "[p]rior [b]ad [a]cts of [a]ppellant."  Second, he mentions the prejudicial effect of this evidence in the last sentence in his "summary of the argument" section.  Third, he mentions "the propensity evidence" in passing in the context of his third argument (alleging error in the denial of his motion for a judgment of acquittal at the close of the government's case).  Finally, he concludes that same argument by asserting that "all the Government had in this case was a gun, found in a truck, and prior bad acts."  Under our controlling law, we do not believe Jernigan has devoted a discrete section of his argument to claims regarding the evidence of his prior bad acts; instead, each mention of this evidence is undertaken as background to the claims he does expressly advance or is buried within those claims.

Our requirement that those claims an appellant wishes to have considered on appeal be unambiguously demarcated stems from the obvious need to avoid confusion as to the issues that are in play and those that are not.  <u>See</u> <u>Federal Sav. & Loan</u>, 813 F.2d at 373 n.3 ("The waiver rule requires that the appellant state and address argument to the issues the appellant desires to have reviewed by this Court in the appellant's initial brief because '[i]n preparing briefs and

one advanced by Nelson. Against Jernigan, the government introduced evidence of (1) his June 19, 1997 conviction for possession of a firearm by a convicted felon; and (2) his possession of several weapons at the time of his February 11, 2000 arrest in this case. Both of these crimes involved the knowing possession of a weapon, and as such they bear on his knowledge that a gun was present in his wrecker just as Nelson's prior convictions bore on Nelson's knowledge of this fact. In this vein, we note that the standard for evaluating the admissibility of a subsequent bad act under Rule 404(b) is identical to that for determining whether a prior bad act should be admitted under this Rule. See, e.g., United States v. Dorsey, 819 F.2d 1055, 1060-61 (11th Cir. 1987) (evaluating prior and subsequent bad acts under precisely the same framework); United States v. Hurley, 755 F.2d 788, 790 (11th Cir. 1985) ("A subsequent act, as well as a prior act, can be used to show intent under Rule 404(b).").

Second, Jernigan does not contest that he committed these acts. Third, as compared with Nelson's 1995 and 1996 convictions, which we have concluded were

---

arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed.'" (quoting Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 3 (1st Cir.1983))). Unsurprisingly, the government does not address Jernigan's Rule 404(b) argument in its brief; instead, it comprehensively discusses the three arguments that are squarely raised and extensively briefed by Jernigan. In our view, this omission is not the product of an oversight by the government, but rather of the fact that nothing in Jernigan's brief apprized appellee that Jernigan was pursuing the 404(b) claim on appeal. Our task in assessing an appeal is to adjudicate the issues that are fairly and plainly presented to us and of which the appellee is put on notice; it is not to hunt for issues that an appellant may or may not have intended to raise. Accordingly, we conclude that Jernigan has abandoned his Rule 404(b) argument on appeal.

temporally relevant to the incident underlying this case, Jernigan's 1997 felon in possession conviction and his subsequent possession of weapons on February 11, 2000 bore even more heavily on his knowledge of the gun found in his wrecker on April 15, 1998. Moreover, the limiting jury instructions delivered by the district court with respect to the inferences that could fairly be drawn from appellants' prior and subsequent bad acts benefitted Jernigan to an equal degree as they did Nelson. Accordingly, had Jernigan squarely raised this issue on appeal, we would not be able to say that the district court abused its discretion in permitting the introduction of his prior bad acts under Fed. R. Evid. 404(b).

## C. *Nelson's Fed. R. Evid. 403 Argument*

Nelson further suggests that the district court erred by rejecting his challenge under Fed. R. Evid. 403[9] to Jernigan's introduction of Nelson's gang membership. Unlike his Rule 404(b) argument, Nelson properly preserved this claim before the

---

[9]This Rule provides that:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

21

district court, and as such we review the court's rejection of his Rule 403 challenge for abuse of discretion. See United States v. Tinoco, 304 F.3d 1088, 1120 (11th Cir. 2002) ("We review the district court's Rule 403 determinations, moreover, for a clear abuse of discretion.") (citation omitted), cert. denied sub nom. United States v. Hernandez, __ U.S. __, 123 S. Ct. 1484, 155 L. Ed. 2d 231 (2003); United States v. Ruiz, 253 F.3d 634, 640 (11th Cir. 2001) ("'A trial court has broad discretion in determining the admissibility of evidence; its ruling will not be disturbed on appeal absent an abuse of discretion.'" (quoting Zapata, 139 F.3d at 1357)); United States v. Pierce, 136 F.3d 770, 775 (11th Cir. 1998) ("We review the district court's decision not to exclude evidence pursuant to Rule 403 for an abuse of discretion.") (citation omitted). As we recently explained in Tinoco, "[i]n reviewing issues under Rule 403, we 'look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" 304 F.3d at 1120 (quoting United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989)).

In this case, Jernigan did not simply inform the jury that Nelson was a gang member, thereby implying that he was a bad person and probably was responsible for the gun's presence in the cab of the wrecker. Instead, he introduced evidence that (1) Nelson was a member of a particular gang that, notably, used the color red as a symbol of membership; and (2) gang members often wrap their weapons in

22

bandannas of their gang's color. This evidence was especially probative in this case because the weapon was found wrapped in a red bandanna.

On the other hand, we do not wish to understate the prejudicial effect that evidence of a criminal defendant's gang membership may entail. Indeed, modern American street gangs are popularly associated with a wealth of criminal behavior and social ills, and an individual's membership in such an organization is likely to provoke strong antipathy in a jury. See generally Kim Strosnider, Anti-Gang Ordinances After City of Chicago v. Morales: The Intersection of Race, Vagueness Doctrine, and Equal Protection in the Criminal Law, 39 Am. Crim. L. Rev. 101, 105-08 (2002) (describing some of the illicit activities associated with gang membership and specifically noting the "public outrage and political reaction" that such activities have produced).

In this case, the Rule 403 calculus was in our view a close one, and the district court would have been justified in deciding this issue either way. That is to say, the court could have reasonably determined that the evidence of Nelson's gang membership did or did not substantially outweigh its probative value. Importantly, it is precisely these close questions that give rise to the deferential abuse of discretion standard of review. Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the

district court, which has first-hand access to documentary evidence and is physically proximate to testifying witnesses and the jury. For these reasons, the district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice, and we are loathe to disturb the sound exercise of its discretion in these areas. See United States v. Williams, 216 F.3d 611, 615 (7th Cir. 2000) (noting in a related context that "we accord great deference to the district court's assessment of the evidence because of the judge's first-hand exposure to the evidence and because of the judge's familiarity with the case and ability to gauge the impact of the evidence on the jury in the context of the trial") (citation omitted). Only if the decision to admit evidence over a Rule 403 challenge is unsupportable when the evidence is viewed in the light most supportive of the decision will we say that the decision constitutes an abuse of discretion. See United States v. Cross, 928 F.2d 1030, 1051 (11th Cir. 1991) ("[A] conviction will not be overturned on the basis of a violation of Rule 403 absent a clear abuse of discretion. This rule is an extraordinary remedy which should be used sparingly, and, indeed, the trial court's discretion to exclude evidence as unduly prejudicial is narrowly circumscribed.") (internal citations and punctuation omitted); United States v. Finestone, 816 F.2d 583, 585 (11th Cir. 1987) ("The 'balance [under Rule 403] should be struck in favor of admission.'" (quoting United States v. Dennis,

24

625 F.2d 782, 797 (8th Cir. 1980))). Because the Rule 403 issue in this case was such a close one, it fell squarely within the ambit of the district court's sound discretion, and Nelson consequently is not entitled to relief on this claim.

*D.     Nelson's Speedy Trial Act Claim*

"We review a claim under the Speedy Trial Act <u>de novo</u> and review a district court's factual determinations on excludable time for clear error." <u>United States v. Williams</u>, 314 F.3d 552, 556 (11th Cir. 2002) (citing <u>United States v. Miles</u>, 290 F.3d 1341, 1348-49 (11th Cir. 2002)).

Under the Speedy Trial Act:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. 3161(c)(1).

However, the Act also provides for the exclusion of certain specified periods of time from the speedy trial calculation. Of particular relevance in this case are sections 3161(h)(1)(F) and (J), which exclude from the seventy-day period "delay resulting from any pretrial motion, from the filing of the motion through the

conclusion of the hearing on, or other prompt disposition of, such motion," 18 U.S.C. § 3161(h)(1)(F), and "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(J). We explained the interaction of these provisions in United States v. Davenport:

> For pretrial motions that do not require hearings, § 3161(H)(1)(F) excludes the time required for "prompt disposition" of the motion. The length of the exclusion depends upon when the court takes the motion "under advisement" for purposes of § 3161(h)(1)(J). If the court has all the information necessary to rule on the motion at the time the motion is filed, the court immediately has the motion under advisement under § 3161(h)(1)(J) and thirty days may be excluded from the speedy trial clock due to the motion. The court may establish a period of time after the motion is filed, however, within which parties may submit materials relating to the motion. The motion is not under advisement by the court during this period of time, which is automatically excluded from the speedy trial clock and is not subject to a reasonableness requirement. Once the period for filing additional materials expires, the court takes the motion under advisement for purposes of § 3161(h)(1)(J) and no more than thirty additional days may be excluded from the speedy trial clock.

> For motions that require hearings, § 3161(h)(1)(F) excludes all time between the filing of the motion and the conclusion of the hearing at which it is addressed. This entire period is excluded from the speedy trial clock and is not subject to review regarding its reasonableness. Once the hearing is concluded, the motion is treated exactly like a motion for which no hearing is required. If the court has all materials necessary to rule on the motion, the court is deemed to have taken the motion under advisement immediately following the hearing and §

> 3161(h)(1)(J) permits no more than thirty additional days to be excluded.

935 F.2d 1223, 1228 (11th Cir. 1991) (citing Henderson v. United States, 476 U.S. 321, 327-28, 106 S. Ct. 1871, 1875-77, 90 L. Ed. 2d 299 (1986)).

In this case, Nelson correctly notes that the speedy trial clock began running on March 29, 2000, the date of his arraignment. On April 21, 2000, the government filed a document that it labeled a "motion" in which it notified Nelson of its intent to introduce at trial evidence of his prior convictions under Fed. R. Evid. 404(b). One week later, Nelson responded by filing a motion in limine to exclude such evidence. Although neither of these motions were acted upon until trial, the district court ruled that the entire time from April 21, 2000 through November 6, 2000 was excludable under § 3161(h)(1)(F) because a hearing was required on the government's motion.

Whether or not the government's April 21, 2000 filing was a motion that required a hearing and tolled the speedy trial clock under § 3161(h)(1)(F), there can be little question that Nelson's motion in limine required a hearing. Indeed, one of the primary components of the Rule 404(b) calculus is the strength of the government's evidence, see United States v. Pollock, 926 F.2d 1044, 1049 (11th Cir.

27

1991),[10] a matter that plainly cannot be properly ascertained until the trial itself.   In more general terms, as we have said, probativeness and prejudice -- which comprise the third prong of the <u>Miller</u> test -- are fact- and context-intensive inquiries that can only be competently made by the district court upon assessing first hand the evidence presented by both parties.   Accordingly, the district court was amply justified in concluding that despite the fact that the hearing on Nelson's motion in limine to exclude the Rule 404(b) evidence was deferred until trial, the speedy trial clock did not run during the entire pendency of this motion.  <u>See</u> 18 U.S.C. § 3161(h)(1)(F); <u>United States v. Phillips</u>, 936 F.2d 1252, 1254 (11th Cir. 1991) ("Motions necessitating hearings, such as suppression hearings . . . are governed by section 3161(h)(1)(F).   As such, the entire time from the filing of the motion to the conclusion of the hearing is excludable, even when the hearing is deferred until trial." (citing <u>United States v. Garcia</u>, 778 F.2d 1558, 1562 (11th Cir. 1986) and <u>United States v. Mastrangelo</u>, 733 F.2d 793, 796 (11th Cir. 1984)); <u>see also</u> <u>United States v. Beard</u>, 41 F.3d 1486, 1488 (11th Cir. 1995) (recognizing that a district court's

_____

[10]We explained in <u>Pollock</u> that "'[i]t is the incremental probity of the evidence that is to be balanced against its potential for undue prejudice . . . . Thus, if the Government has a strong case on the intent issue, the extrinsic offense may add little and consequently will be excluded more readily.'  In other words, if the government can do without such evidence, fairness dictates that it should; but if the evidence is essential to obtain a conviction, it may come in. This may seem like a 'heads I win; tails you lose' proposition, but it is presently the law."  926 F.2d at 1049 (quoting <u>Beechum</u>, 582 F.2d at 914).

decision to defer hearing a motion until trial does not render the intervening time non-excludable under § 3161(h)(1)(F)). Thus, no more than 30 non-excludable days elapsed between Nelson's arraignment and his trial, and no violation of the Speedy Trial Act occurred in this case.

*E.     Jernigan's Newly-Discovered Evidence Claim*

We review the denial of a motion for a new trial based on newly discovered evidence for abuse of discretion. See United States v. Hansen, 262 F.3d 1217, 1236 (11th Cir. 2001) (citing United States v. Pistone, 177 F.3d 957, 958 (11th Cir. 1999)), cert. denied 535 U.S. 1111, 122 S. Ct. 2326, 153 L. Ed. 2d 158 (2002). As we observed in United States v. Ramos:

> To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

179 F.3d 1333, 1336 n.1 (11th Cir. 1999) (citing United States v. Schlei, 122 F.3d 944, 991 (11th Cir. 1997)). Indeed, we have held that motions for a new trial are highly disfavored, and that district courts "should use 'great caution' in granting a new trial motion based on newly discovered evidence." United States v. Garcia, 13 F.3d 1464,

1472 (11th Cir. 1994) (quoting <u>United States v. Johnson</u>, 713 F.2d 654, 661 (11th Cir. 1983)).

In this case, Jernigan bases his newly-discovered evidence claim on Michael West's statement that Nelson told him that he (Nelson) owned the gun found in Jernigan's truck and that he had placed it between the seat cushions. We assume that the first and second prongs of the test set forth above are satisfied, i.e., that West's statement genuinely was discovered after trial and that Jernigan's failure to learn of it earlier did not stem from a lack of diligence. We also will assume without deciding that this evidence was non-cumulative and that it would have been material. However, we are confident that the district court did not abuse its discretion in concluding that it is not probable that West's testimony would have produced a different result. This is so because West's statement unquestionably was hearsay, and it is overwhelmingly likely that the statement was inadmissible under the exception to the hearsay rule set forth in Fed. R. Evid. 804(b)(3).

Rule 804(b)(3) plainly provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). We have interpreted this Rule to "establish[] a three-prong test for the admission of statements against interest in criminal cases: (1)

30

the declarant must be unavailable; (2) the statement must be against the declarant's penal interest; and (3) corroborating circumstances must clearly indicate the trustworthiness of the statement." United States v. Thomas, 62 F.3d 1332, 1337 (11th Cir. 1995) (citation omitted). Here, the first prong of this test is satisfied, as Nelson exercised his Fifth Amendment right not to testify at trial. See id. ("Because they invoked their Fifth Amendment privilege to remain silent, it is clear that the McCoys were unavailable." (citing United States v. Hendrieth, 922 F.2d 748, 750 (11th Cir. 1991))). The second prong is satisfied as well, since Nelson's alleged statements, taken on their face, were self-inculpatory.

The problem for Jernigan, however, is the third prong, because he has failed to make the requisite showing that West's statement was in fact trustworthy. Indeed, the only evidence presented at trial that was consistent with Nelson's alleged self-inculpatory statement was the fact that the weapon was wrapped in a red bandanna and was physically proximate to Nelson's seat in the truck's cab. By contrast, the statement was contradicted by all of the government's evidence inculpating Jernigan. Moreover, the district court is "entitled to consider the fact that [the person proffering the testimony is] a prison inmate in determining whether his testimony would be trustworthy." United States v. Gossett, 877 F.2d 901, 907 (11th Cir. 1989). In this vein, not only was West incarcerated when he allegedly bore witness to Nelson's self-

31

inculpatory statements, but also he (1) had a lengthy history of felony convictions, including two forgery offenses which bore on his character for truthfulness; (2) was then awaiting trial for writing a threatening letter to an individual in the Middle District of Georgia (he notified the district court of Nelson's alleged statements via letter in this case); and (3) had been diagnosed with psychological problems. We have held that "in determining trustworthiness, the [district] court should determine what the possibility was that the declarant fabricated the statement. In other words, it must be unlikely, judging from the circumstances, that the statement was fabricated" if we are to deem the third prong of the Rule 804(b)(3) test satisfied. United States v. Gomez, 927 F.2d 1530, 1536 (11th Cir. 1991) (citing United States v. Thomas, 571 F.2d 285 (5th Cir. 1978)). When all of the circumstances surrounding West's statement are viewed in concert, it seems plain to us that the district court did not abuse its discretion in concluding that it was reasonably likely that West had fabricated Nelson's alleged statement, and that Fed. R. Evid. 804(b)(3)'s "clear indic[ia of] trustworthiness" standard consequently was unsatisfied in this case.

Because West's testimony probably would have been inadmissible under Fed. R. Evid. 804(b)(3), that testimony is unlikely to have generated a different result at trial. Accordingly, Jernigan fails the fifth prong of the test set forth supra, and the

district court did not abuse its discretion in concluding that he is entitled to no relief on his newly-discovered evidence claim.

Nor, given this conclusion, did the district court err by refusing to conduct an evidentiary hearing on this claim. See United States v. L'Hoste, 640 F.2d 693, 696 (5th Cir. 1981) ("Even if it be assumed that a hearing [on a motion for a new trial based on newly-discovered evidence] may be appropriate in some such cases, the facts of the present case do not require one, nothing having been alleged by L'Hoste that would support the admissibility of the statement.").

F.      Jernigan's "Admission of Co-Defendant's Hearsay Statements" Argument

Jernigan argues that the district court erred by allowing the introduction of Nelson's pre-and post-arrest statements to Macon police officers implicating Jernigan. He says that this violated the prohibition announced by the Supreme Court in Bruton v. United States on admitting into evidence in a joint trial one defendant's hearsay confession that facially inculpates a co-defendant, as the admission of the confession violates the rights secured to the co-defendant under the Sixth Amendment's Confrontation Clause. See 391 U.S. 123, 126, 88 S. Ct. 1620, 1622, 20 L. Ed. 2d 476 (1968). Because Jernigan failed to object to this evidence in the district court, we may review its admission only for plain error. See Brazel, 102 F.3d at 1151 & 1151 n.21. To reiterate, under this standard Jernigan "must show that: (1)

an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." Gresham, 325 F.3d at 1265 (citation omitted).

Importantly, however, even plain error review is unavailable in cases where a criminal defendant "invites" the constitutional error of which he complains. See Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1294 (11th Cir. 2002) ("Where invited error exists, it precludes a court from 'invoking the plain error rule and reversing.'" (quoting United States v. Davis, 443 F.2d 560, 564-65 (5th Cir. 1971))), cert. denied __ U.S. __, 123 S. Ct. 868, 154 L. Ed. 2d 849 (2003). In the context of a district court's decision to admit certain evidence, "'[t]he accepted rule is that where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error.'" United States v. Martinez, 604 F.2d 361, 366 (5th Cir. 1979) (quoting United States v. Doran, 564 F.2d 1176, 1177 (5th Cir. 1971)); see also United States v. Parikh, 858 F.2d 688, 695 (11th Cir. 1988) (holding that "the admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates 'invited error'"); United States v. De Parias, 805 F.2d 1447, 1451 n.1 (11th Cir. 1986) ("When counsel for [one defendant] attempted to cross-examine [a witness] concerning the Texas murder, counsel for Ramirez objected to his doing so. The doctrine of invited error

34

precludes Ramirez from complaining now because the court followed his request."),

overruled on other grounds by United States v. Kaplan, 171 F.3d 1351, 1356-57 (11th

Cir. 1999).

In this case, Jernigan did more than simply fail to object to the introduction of

Nelson's statements -- he affirmatively stipulated to their admission. The relevant

exchange proceeded as follows:

> The Assistant United States Attorney: Judge, we worked out -- came to an agreement yesterday that the government in its case will just play both tapes totally from start to finish. That way we won't have to do it piecemeal, and one of the defendants might want to play a piece of it later.

> The court: Okay.

> The Assistant United States Attorney: So, as I recall, there's about 31 or 32 minutes on one tape and approximately 10 to 15 minutes on another.

> The court: Okay. Is everybody agreeable to that?

> Counsel for Jernigan: Yes, Your Honor.

> Counsel for Nelson: Yes, sir.

> The court: Okay.

Simply put, by affirmatively agreeing to the playing of the tapes, Jernigan

effectively caused, i.e., invited, any Bruton error that resulted from the jury's hearing

them. Indeed, we and other courts of appeals have applied the invited error doctrine in factual circumstances that are closely analogous to those presented here. See United States v. Ross, 131 F.3d 970, 988 (11th Cir. 1997) ("The court's decision to deny the prosecutor's request that the indictment be given to the jury was based on the stipulation of counsel that the indictment should not be given to the jury. Thus, any error in failing to give the indictment to the jury was invited.") (emphasis added); United States v. Treadway, 26 Fed. Appx. 594, 596 (8th Cir. 2001) ("Treadway argues that the district court failed to comply with Federal Rule of Criminal Procedure 23(b) when it excused a juror and allowed the case to be tried to an eleven-person jury. We conclude that Treadway is not entitled to any relief because both he and his counsel orally consented in open court to proceed with an eleven-person jury and thereby invited the alleged error of which he now complains." (citation omitted); Parikh, 858 F.2d at 695 ("Defense counsel effectively caused the injury about which he now complains by questioning the witness about the contents of the letter."). This is not to say that had Jernigan not consented to the tapes' introduction the tapes necessarily would have been inadmissible -- indeed, we express no opinion as to the merits of the underlying Bruton claim -- but merely to say that a criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error. This is precisely the situation

36

that the invited error doctrine seeks to avert, and in this case the doctrine precludes Jernigan from asserting as error under <u>Bruton</u> the introduction of Nelson's hearsay statements.

In sum, we conclude that none of appellants' claims on appeal are meritorious, and accordingly we affirm their convictions in all respects.

**AFFIRMED.**

FULLAM, District Judge, concurring:

I reluctantly concur in the result reached by the majority because, although I am convinced that neither appellant received a fundamentally fair trial, it appears under controlling precedent in this circuit, that relief cannot be afforded in this direct appeal, but must await collateral attack via a §2255 motion.

In the circumstances of this case, it should have been obvious to the prosecution as well as defense counsel that appellants could not fairly be tried in a single trial, since their defenses were antagonistic. Trying both men together enabled the government to use the out-of-court statement of each to convict the co-defendant, without confrontation or cross-examination, in plain violation of their constitutional rights under *Bruton v. United States*, 391 U.S. 123, S. Ct. 1620 (1968). But, although both appellants sought separate trials, neither has appealed the denial of severance. And, strange as it seems, trial counsel were prevailed upon to stipulate to the admissibility of the statements which violated *Bruton* principles. Thus, the issue of joint trial is not before us, and the *Bruton* violation constitutes invited error which cannot be addressed by this Panel. *United States v. Parikh*, 858 F.2d 688 (11th Cir. 1988); *United States v. Parias*, 805 F.2d 1447 (11th Cir. 1986).

As to both appellants, the government introduced extensive evidence of prior (and subsequent) "bad acts," the admissibility of which is governed by Federal Rule of Evidence 404(b). In my view, none of this evidence should have been received. Although I recognize that the Eleventh Circuit cases cited by the majority have substantially eroded Rule 404(b)'s prohibition of assaults on a defendant's character to show propensity to commit a crime of the type charged, I note that many of the cited cases involved evidence admitted on cross-examination for purposes of impeachment, or "pattern" crimes, where similarities of style tended to identify the defendant as having committed the crime on trial. In the circumstances of the present case, I find it mind-boggling to suggest that Jernigan's ownership of a semi-automatic rifle found in his house in February 2000 tends to prove that he knew about a handgun behind the seat of the tow truck two years earlier, on April 15, 1998, or that the various other instances in which the appellants either possessed or were in close proximity to weapons of various kinds, years earlier, sheds any meaningful light on the issues being tried in this case. In my view, the only possible significance of the evidence of other "bad acts" in this case was to suggest that the defendants were unsavory characters who had demonstrated a propensity for firearm possession - a purpose which is squarely prohibited by Rule 404(b). I recognize, however, that there are reported

39

decisions in this Circuit which seem to assume, as do my colleagues of the majority, that evidence of gun possession on one occasion may be relevant to prove gun possession on an entirely different occasion. The question still remains, however, whether the probative force of such evidence is sufficient to outweigh the obvious prejudice to the defendant it entails.

Be all that as it may, appellant Nelson did not object to the evidence at trial, and is limited to arguing "plain error"; appellant Jernigan has not raised the issue on appeal; and Jernigan himself produced the evidence of Nelson's gang membership. It is therefore at least arguable that neither appellant is entitled to a ruling that the trial judge abused his discretion.

For me, the most egregious error with respect to the 404(b) issues is one which has not been addressed by either appellant, namely, the prosecutor's closing argument on the subject. In his relatively brief closing argument, the prosecutor exhorted the jury to convict the defendants because their previous crimes demonstrated their disdain for the law. Some examples:

> "But what has the evidence shown in this case? The defendants Randy Jernigan and Wendell Nelson have contempt for the law. They have contempt for the rules and regulations by which we have an orderly society. We know that by what we have heard on the videotape. We know that by their stipulations that they're convicted

felons and can't have guns. We know that through their prior contact with law enforcement and their actions.

"Actions speak louder than words ...

"... And then when they get to [Jernigan's] house later that day, he's got this SK5 semi-automatic long high-capacity magazine rifle in his closet. He knows he can't have it - but he just has it.

"Now, Wendell Nelson, 1996, he's in a car, two handguns under the front seat and he's in the back seat with a shotgun. You've got that conviction. He pled guilty of that ...

"So, here we have two convicted felons, who we know we can't believe, who make self-serving statements out there at the scene, who have a propensity ... a common theme of having a gun wherever they are ..."

I do not believe the government should be permitted now to argue that the evidence was admitted for any purpose other than propensity.

Unfortunately for the appellants, however, neither lodged any objection to the prosecutor's closing argument at the time, and neither appellant has raised the issue on appeal.

In my view, as stated above, neither appellant received a fundamentally fair trial. Speaking for myself, I would prefer to grant both appellants new trials, but,

given the limitations of appellate authority on direct review, I reluctantly concur in

the judgment.