[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15603
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00117-WS-C-2


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DAVID PETERSEN,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(September 13, 2017)

Before MARTIN, JULIE CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Defendant appeals the district court's denial of his motion for a new trial based on newly discovered evidence. We affirm.

## I.    BACKGROUND

### A.    Factual Background

Defendant David Petersen ("Defendant") was indicted by a grand jury in May 2013, along with co-defendants Yaman Sencan, Stephen Merry, and Timothy Durkin, for their involvement in a Ponzi scheme between 2009 and 2012. The scheme involved soliciting investments in Westover Energy Trading, LLC ("Westover") through an entity called Ramco and Associates, LLC ("Ramco"), which Sencan claimed would invest the funds through a trading algorithm of Westover's that would provide high returns and little risk. Rather than having investors wire their funds to Ramco, Sencan had them wire their funds to an entity called Ramco 1 Business Trust ("Ramco 1"), which was formed by Merry and Defendant. Defendant was Ramco 1's accountant, and he and Merry had exclusive control over the trust's bank account. At Sencan's direction, Defendant diverted the funds from Ramco 1 into various personal and business accounts controlled by Defendant and his co-defendants, and distributed some of the funds to investors, who were thereby led to believe that they were receiving the promised return on their investments. Investors placed $4.6 million into the scheme, of which $3.1

million was distributed back to them, and $1.5 million went to Defendant, Sencan, Merry, and Durkin.

### B.     Procedural History

Defendant was convicted of one count of conspiracy to commit securities and wire fraud, one count of securities fraud, and eighteen counts of wire fraud. The court sentenced him to serve a total of 60 months' imprisonment and 3 years of supervised release.  On direct appeal, a panel of this Court affirmed Defendant's conviction and sentence.  Following his unsuccessful appeal, Defendant filed several *pro se* motions—Motion for Immediate Disclosure of Favorable Evidence, Motion for Reconsideration and Clarification, and Motion to Compel Production of Grand Jury Material—which the district court denied.

Again acting *pro se*, Defendant then filed a motion for a new trial, which the district court described as "a sprawling, 81-page Motion for New Trial that, in substantial part, reiterates and expounds on certain failed arguments and themes animating his prior postconviction motion practice."  Defendant alleged that the Government withheld evidence in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and it knowingly relied on false testimony in violation of its obligations under *Giglio v. United States*, 405 U.S. 150 (1972).  The evidence and testimony Defendant points to includes (1) files related to the SEC's investigation of a Stephen Kirkland and his company, The Kirkland Organization,

3

Inc.;[1] (2) the Government's Trial Exhibit 200, which is an agreement signed by Wesley McCain, one of the scheme's victims; (3) the FBI's investigative file of Arthur Cohen, a real estate mogul and one-time principal in Westover; and (4) records regarding the FBI's efforts to apprehend co-defendant Durkin, who fled the country following the indictment. Concluding that Defendant had not actually identified any pertinent new evidence, that the Government had not withheld exculpatory evidence before trial or presented false testimony at trial, and that none of the evidence proffered by Defendant would have yielded a different result at trial, the district court denied Defendant's motion. We agree with the district court and affirm its ruling.

## II.    DISCUSSION

### A.    Standard of Review

A denial of a Rule 33 motion for a new trial is reviewed for abuse of discretion. *United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003). A district court's denial of a motion for a new trial based on an alleged *Brady* or *Giglio* violation is also reviewed for abuse of discretion. *See United States v. Vallejo*, 297 F.3d 1154, 1163 (11th Cir. 2002); *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017) ("*Giglio* error is a type of *Brady* violation.").

---

[1] Kirkland was investigated for securities violations and making false representations to investors concerning Westover and investments in Westover. The SEC eventually initiated civil litigation against Kirkland.

**B.**     **Whether Defendant's Motion for a New Trial Was Correctly Denied**

A court may grant a defendant's motion for a new trial based on newly discovered evidence within three years of the verdict. Fed. R. Crim. P. 33. To successfully move for a new trial based on newly discovered evidence, a defendant must show

> that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*Jernigan*, 341 F.3d at 1287. Such motions are "highly disfavored" and should be granted "only with great caution." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc).

Newly discovered evidence showing a *Brady* violation may be grounds for a new trial. *Id.* To obtain a new trial for a *Brady* violation, a defendant must show that the Government possessed and suppressed favorable evidence; that the defendant "could not obtain the evidence with any reasonable diligence"; and that "had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *Vallejo*, 297 F.3d at 1164. To succeed in a *Giglio* challenge, "the defendant must demonstrate that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently

5

learned was false testimony, and that the falsehood was material.'" *Id.* at 1163–64 (quoting *United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001)). A falsehood is material if "the false testimony 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Dickerson*, 248 F.3d at 1041 (quoting *Strickler v. Greene*, 527 U.S. 263, 290 (1999)). Thus, while each of these claims involves different standards, there is overlap, and all three require a reasonable likelihood that the new evidence would have affected the outcome of the case.

### 1.    SEC Investigation of Stephen Kirkland

Defendant argues that the Government committed a *Brady* violation by failing to provide him with notice of the SEC's investigation of Stephen Kirkland and with documents relating to that investigation, including email and bank records, subpoena returns, corporate ownership information, and the final agency findings and decision to initiate civil proceedings against Kirkland. Defendant argues that the evidence from the Kirkland investigation is favorable to him because even though the Government acknowledges similarities between the two cases, it did not subject Kirkland to criminal charges, meaning that Defendant should have enjoyed the same fate. We disagree.

First, the Government provided a CD to Defendant during discovery with about 2100 pages of documents pertaining to the Kirkland investigation. So, to the

extent any of the information Defendant now identifies was contained on that CD, it is not newly discovered evidence and cannot serve as the basis for a new trial. Further, Defendant was aware of this investigation, and through the exercise of reasonable diligence, he could have sought any additional information related to the Kirkland investigation. Indeed, the SEC's civil complaint against Kirkland was filed on a public docket nearly three months before Defendant's case went to trial, yet, Defendant did not seek any information concerning that matter.

Nor has Defendant demonstrated how any information in the Kirkland investigative file would have led to a different result at his trial. Defendant's conviction related to offenses distinct from any involvement by Kirkland with Westover. Thus, a decision by the Government not to prosecute Kirkland does not translate into a conclusion that Defendant was innocent of any wrongdoing. As Defendant has not shown that the above evidence would likely have made a difference in his trial, the district court did not abuse its discretion when it denied Defendant's motion for a new trial on this ground.

2.      Trial Exhibit 200

Defendant next argues that McCain falsely testified to signing a co-investment agreement with Ramco and Westover, with the "agreement" being entered as the Government's Trial Exhibit 200, and that the Government knowingly relied on testimony it knew to be false. Defendant further argues that

the Government tampered with its Trial Exhibit 200 by removing the last four pages of the document, which, Defendant alleges, contain exculpatory evidence, and which action rendered the document a forgery. Defendant bases this allegation on a comparison of Trial Exhibit 200 to a different co-investment agreement between Ramco, Westover, and other companies that contained additional pages.

Because this other agreement is a wholly separate agreement, however, Defendant cannot show that Trial Exhibit 200 was altered or constituted a forgery merely because it was not identical to this other agreement. In addition, Defendant had access to both of these documents prior to and during trial, so it is clear that this evidence is not newly discovered. In short, the district court did not abuse its discretion by declining to grant Defendant a new trial based on this evidence.

### 3. FBI's Investigative File of Arthur Cohen

Defendant further argues that a Government witness knowingly gave false testimony when he said he did not believe Cohen was involved in the scheme, even though the witness knew that Cohen was involved with Westover. Defendant also asserts that the Government withheld the FBI's investigative file on Cohen, which allegedly spans over twenty years and details "the many [misdeeds] and unethical behaviors of Cohen," and that he could not have obtained that information through due diligence because he was not a member of the FBI.

8

Defendant's assertion that the Government committed a *Giglio* violation by denying any connection between Cohen and Westover is contradicted by the record.  Government witnesses testified at trial that despite telling the grand jury that Cohen was not involved with Durkin (who was a principle investor in Westover and its managing partner), their later investigation revealed that Cohen in fact owned a company that had a brokerage account connected to Durkin, and that Cohen owned one of the two companies that formed Westover, although Cohen pulled his money out before the beginning of the indictment period.  Thus, Cohen's connection with Westover was disclosed.  As to the Government's alleged failure to disclose its twenty-five year investigative file on Cohen, Defendant has not shown that such a file exists.  His only evidence on this point is a DOJ press release discussing a settlement by Cohen to resolve banking law violations unrelated to this case, which press release does not mention any sort of long-term investigative file.  Even if such a file did exist, Defendant has not shown how any information in the file would be favorable to him, especially considering that a significant portion of it would contain information obtained prior to the initiation of the Ponzi scheme at issue here.  Further, Defendant was convicted for his actions regarding Ramco 1, with which Cohen never had any connection.  Indeed, because Defendant's conviction rests on evidence unrelated to Cohen's involvement with Westover, Defendant has not shown that evidence related to

9

Cohen would have changed the outcome of his trial.  The district court therefore did not err in concluding that Defendant was not entitled to a new trial based on any evidence related to Cohen.

4.    Evidence Regarding Efforts to Apprehend Timothy Durkin

At trial, the Government presented testimony that co-defendant Durkin had been indicted, but was not in custody and was believed to be in the United Kingdom.  In its efforts to apprehend Durkin, the FBI had purportedly entered an arrest warrant into the National Crime and Information Center (NCIC) database, "forwarded the arrest warrant on to Interpol," and requested a Red Notice, which requests that foreign law enforcement agencies attempt to arrest Durkin pursuant to the U.S. arrest warrant.  Defendant disputes the veracity of the above information, stating that the Interpol Red Notice was published four months after trial and the United States Marshals Service website did not have Durkin listed as a fugitive as of May 2015.  According to Defendant, this lack of effort on the part of the Government in apprehending Durkin denied Defendant his right to call Durkin as an exculpatory witness or to use other "related exculpatory discovery evidence that Durkin would have provided."  Notably, Defendant fails to elaborate on what this evidence might entail.

As the district court correctly concluded, a new trial is not warranted based on this allegation.  Defendant has not shown that any testimony regarding the

FBI's efforts to find Durkin was false because the absence of Durkin from the United States Marshals' fugitive list does not mean that the warrant was not entered into NCIC. Similarly, that Interpol did not publish the Red Notice until four months after the trial does not contradict testimony that the warrant was "forwarded" to Interpol. Even if the testimony had been untruthful, Defendant does not show how his prosecutors knew or should have known that the testimony was incorrect. Indeed, as this Court noted in affirming Defendant's conviction, there was no misconduct surrounding efforts to extradite Durkin or anything improper about the testimony. *United States v. Sencan*, 629 Fed. App'x 884, 891 (11th Cir. 2015). Finally, even if the Government's efforts to apprehend Durkin were lackadaisical, Defendant has not shown how Durkin's presence would have made a difference in Defendant's trial, given the ample evidence against him.

## III.  CONCLUSION

Defendant has not made the requisite showing for a new trial. The district court therefore did not abuse its discretion in denying Defendant's motion for a new trial, and its order is therefore **AFFIRMED**.