**Rowell Victor SMART, Plaintiff–Appellant,**

v.

**Donna SHALALA, Defendant–Appellee.**

No. 92–3053.

United States Court of Appeals, Eleventh Circuit.

Dec. 21, 1993.

John P. Cunningham, St. Petersburg, FL, for plaintiff-appellant.

Tamra Phipps, Asst. U.S. Atty., Tampa, FL, Claire S. Hoffman, Office of the Gen. Counsel, Baltimore, MD, for defendant-appellee.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

This is an appeal from the district court's order affirming a final decision by the Secretary of Health and Human Services. The Secretary denied Social Security retirement benefits to a previously deported alien on the ground that, although he is now residing in the United States, he has not been lawfully admitted for permanent residence in the United States since his earlier deportation, a statutory prerequisite for a deportee to receive retirement benefits. We affirm.

The plaintiff Rowell Victor Smart was born in England in 1918. When he was two years old, his parents brought him to the United States to reside. Smart remained in the United States for the next 40 years, and during that time worked and paid Social Security taxes. In 1961, however, he was deported from the United States for cashing a bad check.

Smart unlawfully reentered the United States in 1965 and again in 1970. On both occasions he was promptly deported. In 1978, Smart unlawfully reentered the United States yet again, but this time avoided detection by assuming a false name and Social Security number. Smart worked under the false name until 1988 when he was arrested and charged with counterfeiting. After pleading guilty in federal court, Smart received a suspended sentence and was placed on probation for two years. In connection with the sentence, the district court entered a written recommendation that the "defendant not be deported," apparently out of deference to his age and length of stay in the United States.

In April 1989, when Smart applied for Social Security retirement benefits, the Secretary informed him that, although otherwise eligible, he would receive no benefits because he had not shown that he had been lawfully

admitted to the United States following his deportation, as required by § 202(n) of the Social Security Act, 42 U.S.C.A. § 402(n). The initial decision was affirmed upon reconsideration, affirmed after a hearing before an administrative law judge, and denied review by the Appeals Council. The district court affirmed the Secretary's decision. This appeal followed.

■ The statute under which the Secretary denied benefits clearly provides that "[i]f any individual is … deported … no [retirement] benefit … shall be paid … before such individual is thereafter lawfully admitted to the United States for permanent residence." [1]

■ Smart acknowledges that he was deported. He argues, however, that he is an alien "permanently residing under color of law," thus enjoying what is known as PRUCOL status. Smart contends that PRUCOL status is the equivalent of being lawfully admitted for permanent residence. That argument is plainly wrong.

"Lawfully admitted for permanent residence" is defined by statute. The Immigration and Naturalization Act provides that the term "lawfully admitted for permanent residence" means the *status* "of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). Under the immigration laws, Smart is deportable. He is residing in the United States in spite of the immigration laws, not in accordance with them.

The Supreme Court has stated, in another context, that the status of being lawfully admitted for permanent residence "carries several important privileges: [the alien] may remain in the United States indefinitely; he is free to work in this country; he may

return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence in the United States." *Saxbe v. Bustos,* 419 U.S. 65, 72, 95 S.Ct. 272, 278, 42 L.Ed.2d 231 (1974). Smart does not enjoy any of these privileges. He is subject to deportation at any time if the INS chooses to go forward with such proceedings. The district court simply "recommended" he not be deported, and did not endow him with any of the benefits of a permanent resident. He is not entitled to remain in this country indefinitely or establish permanent residence here. He cannot obtain a green card, and therefore is not free to work in this country. He would have no right to reenter the United States if he left temporarily.

Smart correctly argues that an alien with PRUCOL status enjoys certain statutory benefits. PRUCOL is a criterion for determining whether an alien is eligible for benefits under certain public welfare programs, such as Medicaid and Supplemental Security Income for the Aged, Blind and Disabled. *See, e.g.,* 42 U.S.C. § 1382c(a)(1)(B)(i), 20 C.F.R. § 416.1618; 42 C.F.R. § 435.408(a). But by focusing the retirement provisions only on those deportees who have thereafter been lawfully admitted for permanent residence, Congress omitted PRUCOL status aliens from the retirement benefits of the Social Security Act. Although Smart distinguishes *Flemming v. Nestor,* 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the Supreme Court case which upheld this statute, on the ground that the deportee claimant there was living outside the United States, while he is living in the United States, the statute makes no such distinction.

This decision makes it unnecessary for the Court to decide whether Smart in fact enjoys PRUCOL status. This decision also defeats Smart's contention that the Secretary violat-

1. § 202(n) of the Social Security Act, 42 U.S.C.A. § 402(n).

(1) If any individual is (after September 1, 1954) deported under section 1251(a) of Title 8 (other than under paragraph (1)(C) or (1)(E) thereof) then, notwithstanding any other provisions of this subchapter—

(A) no monthly benefit under this section or section 423 of this title shall be paid to such

individual, on the basis of his wages and self-employment income, for any month occurring (i) after the month in which the Secretary is notified by the Attorney General that such individual has been so deported, and (ii) before the month in which such individual is thereafter lawfully admitted to the United States for permanent residence.

ed his right to due process by refusing to consider his PRUCOL status.

■ Smart's constitutional equal protection argument is meritless. The "preliminary step in equal protection analysis is to determine whether persons who are similarly situated are subject to disparate treatment." *Johnson v. Smith,* 696 F.2d 1334, 1336 (11th Cir.1983). Smart does not allege the disparate treatment of similarly situated persons.

■ Although Smart argues that the record does not show that the Attorney General notified the Secretary of his deportation in accordance with § 202(n)(1)(A)(i), this argument is raised for the first time on appeal. This Court will not consider matters of this type first raised on appeal. *See Wheeler v. Heckler,* 784 F.2d 1073, 1077 (11th Cir.1986). This is especially so when the argument concerns a factual issue that could easily have been resolved had it been properly raised before the Secretary. Smart acknowledges he was deported and might well have run afoul of the Federal Rules of Civil Procedure had he denied that fact in the district court.

AFFIRMED.