[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 04-12101
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 7, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00210-CR-ORL-22-JGG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES HOWELL MONTGOMERY,

Defendant-Appellant.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------------------------------
(October 7, 2005)

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Defendant-Appellant Charles Howell Montgomery appeals his convictions and sentences of life imprisonment plus 360 months for drug trafficking and firearms possession offenses. No reversible error has been shown; we affirm.

Defendant first argues that the district court erred in denying his motions to suppress the evidence found from two searches of his residence. The first search occurred on 14 August 2003, the second on 2 October 2003. Defendant maintains that the probable cause affidavit used to obtain the first search warrant contained stale information: the warrant alleged only two controlled buys a month earlier. And Defendant contends that the affidavit used to obtain the second search warrant also did not establish probable cause: his house was searched and "cleaned-out" on 14 August, and a confidential informant (CI) attempted, but failed, to buy drugs from Defendant's house on 30 September.

We review de novo whether an affidavit established probable cause to support the issuance of a search warrant. See United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000). But we are careful "to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. (citation omitted). Also, when considering a ruling on a motion to suppress, we construe

all facts in the light most favorable to the prevailing party: here, the government. See United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).

We conclude that the affidavits established probable cause for the issuance of both search warrants. For probable cause to exist, "the information supporting of the government's application for a search warrant must be timely, for probable cause must exist when the magistrate judge issues the search warrant." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). The affidavit supporting the 14 August search detailed the CI's two controlled cocaine purchases from Defendant's home, on 7 July and 10 July, about one month before the warrant was issued on 8 August 2003. The CI stated that he was familiar with the residents at Defendant's home and that he could purchase crack cocaine there. The CI identified Defendant as the person who sold cocaine in the first purchase and Defendant's brother as the person who sold cocaine in the second purchase. The two drug transactions at Defendant's home suggest an ongoing drug trafficking operation and not a "mere isolated violation." See Bervaldi, 226 F.3d at 1265 (citation omitted) (courts look at inherent nature of crime in determining staleness). And the second purchase was made less than one month before the warrant was issued. The information about the month-old purchases was not fatally stale to the issuance of the warrant that led to the 14 August search.

The issuance of the warrant authorizing the 2 October search was similarly proper. The affidavit indicated that, on 30 September 2003, the CI approached Defendant at his home to purchase drugs. Defendant told the CI, in coded language, that he had powder cocaine but not crack cocaine.[1] While visiting Defendant's house, the CI observed a woman carrying a baggie appearing to contain cocaine; this woman told Defendant that "it was good" and then went into Defendant's house. The affidavit also referenced the two July drug purchases and that the 14 August search of Defendant's home had yielded cocaine and crack cocaine. The second affidavit showed that a pattern of drug distribution activity was occurring at Defendant's home over several months and that Defendant had indicated only three days before the search that he had powder cocaine. We conclude that this affidavit established probable cause for the issuance of the warrant authorizing the 2 October search.[2]

Defendant argues second that the district court violated his Sixth Amendment right to counsel by denying his trial lawyer's motion to withdraw

---

[1]The CI asked Defendant if he had any "stones" (crack cocaine). Defendant responded, "I ain[']t doing nothing with mine, my shit[']s heavy," meaning that Defendant had no crack cocaine, only powder cocaine.

[2]In the light of our determination that probable cause supported the issuance of both warrants, we need not consider Defendant's argument that the good faith exception for reliance on a warrant, United States v. Leon, 104 S.Ct. 3405 (1984), does not apply due to the alleged insufficiency of both probable cause affidavits.

based on Defendant's alleged threats against his lawyer.[3]  Defendant claims that trial counsel thus proceeded under a conflict of interest, resulting in a constructive denial of effective assistance of counsel.

We generally do not consider claims of ineffective assistance of counsel raised for the first time on direct appeal, especially where, as here, the record is not developed sufficiently for effective appellate review.  See United States v. Tyndale, 209 F.3d 1292, 1294 (11th Cir. 2000).  Here, the record does not show that the ineffective assistance issue was litigated in the district court.  Defendant's lawyer's motion to withdraw was adjudicated in an untranscribed pre-trial status conference; the minutes of this conference do not specify the arguments made or the district court's reasons for denying the motion.  And Defendant has not identified specific instances of his trial lawyer's ineffective assistance based on this alleged conflict of interest: he only alleges that his lawyer was "impaired." The record is not complete enough for us to rule on Defendant's claim of ineffective assistance based on conflict of interest[4] so we make no ruling.

---

[3] Defendant's lawyer alleged that the Marshal's Office told him it had received information that Defendant planned on "choking out his attorney" during trial.  The lawyer discussed this matter with the Florida State Bar, which advised him that Defendant's threat constituted a conflict of interest and that he should move to withdraw.

[4] Defendant also argues that the district court deprived him of his due process and equal protection rights (1) by failing to notify him of the motion to withdraw and (2) by failing to hold a hearing on the motion to withdraw.  Defendant did not raise these constitutional arguments below:

5

Defendant next argues that he did not receive a fair trial because the district court required him to wear restraints. He asserts that the district court could have used less prejudicial security measures, such as adding extra marshals to the courtroom. He requests that he be allowed to interview the jurors to determine if seeing him in restraints affected their decision to find him guilty.

Defendant did not object to the use of restraints before the district court: we normally review for plain error. United States v. Raad, 406 F.3d 1322, 1323 (11th Cir. 2005). But plain error review is unavailable "where a criminal defendant invites the constitutional error of which he complains." United States v. Jernigan, 341 F.3d 1273, 1289 (11th Cir. 2003). Here, the district court held a pre-trial hearing about security arrangements. Defendant was not present at the first part of this hearing. The district court noted that Defendant had refused (1) to take his medication, which apparently made him less aggressive, and (2) to change out of his prison uniform, despite the court having purchased "two very nice shirts." The

---

we review them for plain error and reject them. United States v. Woodard, 387 F.3d 1329, 1331 (11th Cir. 2004) (setting out plain error standard), cert. denied, 125 S.Ct. 1390 (2005). The record indicates that the district court did consider at the status conference defense counsel's arguments in support of his motion to withdraw. Defendant has not shown the existence of similarly situated criminal defendants who were notified of counsel's desire to withdraw. See Smart v. Shalala, 9 F.3d 921, 924 (11th Cir. 1993) (allegation of disparate treatment of similarly situated persons essential to equal protection claim). And Defendant has not identified binding case law showing that criminal defendants have a due process right to be informed that their lawyer has filed a motion to withdraw.

district court also stated that it had information that Defendant was going to try to escape and to injure people, including defense counsel. Defense counsel and the court discussed leg restraints and "hand irons": defense counsel stated, "maybe after I talk to him, he'll consent to" wearing hand irons. Defense counsel and the district court also talked about how best to conceal Defendant's restraints from the jury's view. Counsel indicated later that Defendant was "fine" with wearing wrist restraints. And after Defendant was brought before the district court, the court asked if he had agreed to wear wrist restraints; Defendant nodded his head and said, "It doesn't matter." Under these facts, we determine that Defendant invited any error arising out of his wearing restraints at trial.

Citing Blakely v. Washington, 124 S.Ct. 2531 (2004), Defendant last argues that the district court erred in applying various sentence enhancements: Defendant contends that a jury should have determined, beyond a reasonable doubt, the facts underlying the enhancements. Defendant concedes that he did not raise this claim below: we review for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005), cert. denied, No. 04-1148 (U.S. June 20, 2005). After Defendant filed his appeal, the Supreme Court applied its Blakely jurisprudence to the federal sentencing guidelines. See United States v. Booker, 125 S.Ct. 738 (2005). A defendant cannot meet the plain error standard for Booker error unless

he can demonstrate a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge." Rodriguez, 398 F.3d at 1301. Defendant has not satisfied this requirement. Nothing in the record indicates that the district court might have imposed a different sentence had the guidelines been advisory only. And we note that, regardless, Defendant was subject to a statutory mandatory life sentence for one of the drug offenses because of his prior convictions, to which he admitted at sentencing.

AFFIRMED.