**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Anilkumar R. PARIKH, Vasant A. Patel, Defendants–Appellants.**

Nos. 87–8057, 87–8463.

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1988.

---

C. Michael Abbott, Abbott & Arbes, P.C., Jake Arbes, Atlanta, Ga., Bobby Lee Cook, Cook & Palmour, Summerville, Ga., Paul H. Kehir, Snellville, Ga., for defendants-appellants.

Robert L. Barr, Jr., U.S. Atty., Gerrilyn Brill, U.S. Attys. Office, Atlanta, Ga., for plaintiff-appellee.

Before VANCE and HATCHETT, Circuit Judges, and SCOTT *, District Judge.

HATCHETT, Circuit Judge:

In this unusual criminal case involving a fraudulent life insurance scheme, we affirm the convictions and sentences holding that any error at trial was invited, not preserved for review, or not sufficient to constitute plain error.

## FACTS

Anilkumar R. Parikh and Vasant A. Patel, the appellants, jointly owned Best Appliances, Inc. (Best), a small appliance store located in Smyrna, Georgia. Both Parikh and Patel are originally from India. Parikh is a United States citizen; Patel is in the United States pursuant to a permanent resident visa. Both men have friends and relatives in India.

Parikh and Patel devised a scheme to defraud at least twenty-eight life insurance companies. Between January and May, 1983, Dhiren C. Joshi, an individual the government contends never existed and whose existence Parikh and Patel failed to establish at trial, filed thirty-two applications for $100,000 term life insurance policies. In each case, Joshi contacted an insurance agent by telephone; sometimes he requested information on a specific life insurance company; at other times, he requested quotes on various $100,000 term life insurance policies. After requesting and receiving an application, Joshi would return the completed application to the insurance company's home office, which would send the policy to its agent, who in turn would mail the policies to Joshi.

According to the insurance applications, Joshi was a 32–year old man in excellent health who lived in Bremen, Georgia for 1 to 1½ years at Box 58, Route 3, Bremen, Georgia. This was Parikh's home address. The applications revealed that Joshi's telephone number was identical to Parikh's. The insurance applications indicated that Joshi's former residence was 600 West 113th Street, New York, New York, which was a former residence of Patel. The applications showed: that Joshi was an owner of Best and a business partner of Parikh and Patel; that Joshi was employed by Best; and that Joshi had been employed by Best since December, 1981. All the applications falsely represented that no other life insurance policies were in force nor life insurance applications pending on the life of Dhiren C. Joshi.

Twenty-eight of the thirty-two applications were processed into policies. Each policy either listed Parikh as the sole beneficiary, Parikh and Patel as primary and contingent beneficiaries, or Parikh and Patel as joint beneficiaries. The premiums on the policies were payable annually. Parikh and Patel paid the first year's premium at the time of the application, and paid subsequent premiums on the first and second anniversaries of the policies. The premiums were paid from accounts at two banks, the Citizens and Merchants Bank (now the Citizens Bank and Trust) and Exchange Bank in Bremen, Georgia. Parikh opened both accounts in the name of Dhiren C. Joshi. Parikh requested that Joshi's name alone appear on the printed checks and deposit tickets; Parikh's and Patel's names appeared with Joshi's on the signature cards. Between December, 1982, and July, 1985, Parikh and Patel deposited funds into these accounts solely to pay the insurance premiums on Joshi's life insurance policies.

Generally, after two years, an insurance company cannot contest an insurance policy for any reason other than nonpayment of premiums. An insurance company will conduct minimal investigation into the circumstances of the insured's death if the

---

* Honorable Thomas E. Scott, U.S. District Judge for the Southern District of Florida, sitting by designation.

policy has been in effect for at least two years. During the third year of the Joshi policies, Parikh and Patel produced an Indian death certificate showing that Dhiren C. Joshi had died in a remote Indian village on September 19, 1985, and was subsequently cremated. In November, 1985, Parikh and Patel signed and submitted twenty-eight claims for the benefits of the Joshi insurance policies. Parikh and Patel falsely represented on these claims that no other life insurance policies were in force on Joshi's life.

On the strength of the foreign death certificate, twelve insurance companies paid the death benefits. Between November and December, 1985, Parikh and Patel took, received, and deposited twelve checks, each in amounts between $100,000 and $102,000, in twelve newly-opened bank accounts at twelve different banks. A number of insurance companies became suspicious about the claims and conducted investigations to discover the existence of fraud. Because two years had passed since the policies had been purchased, the insurance companies could nullify the claims only upon proof of fraud. The insurance companies' investigations revealed that the twenty-eight insurance applications submitted by Joshi contained numerous false statements.

The Federal Bureau of Investigation (FBI) also conducted an investigation. On February 15, 1986, FBI Special Agent John K. Coffey, the case agent, received a telephone call from an anonymous informant, who volunteered information on the scheme involving Parikh and Patel. On February 19, 1986, Coffey received an envelope which included a letter and a chart showing the various insurance companies allegedly defrauded, the name and address of each insurance agent, the insurance agent's telephone number, the policy number, the date of the policy, and the amount of the policies. The envelope also contained a note which claimed that Dhiren C. Joshi was simply an alias for Parikh and Patel.

One month after receiving the information from the anonymous informant, a federal grand jury indicted Parikh and Patel for forty violations of 18 U.S.C. § 1341 (mail fraud) and one of 18 U.S.C. § 371 (conspiracy). On April 7, 1986, Coffey received a second envelope from the anonymous informant. This envelope contained an anonymous letter, copies of check registers from the two Joshi bank accounts from which the premiums were paid, copies of steno pad pages with information about each insurance company, the policies issued, the amounts of the premiums, the names, addresses, and telephone numbers of the agents, and originals of sample applications for insurance in the name of Bankim Mehta that were similar to the Joshi applications. Prior to the receipt of the second letter, Coffey received a second telephone call providing more details on the scheme.

All of the documents except the two letters and the chart were disclosed to the defendants during discovery. The defendants neither asked the government how it obtained the documents nor filed a motion to suppress the documents. Prior to the trial, the government did not volunteer to Parikh and Patel that the documents, accompanied by notes, came from an anonymous informant.

## THE TRIAL

At trial, out of the presence of the jury and before any evidence concerning the "anonymous" documents was introduced the government prosecutor informed the court:

During the course of the investigation John Coffey was sent a package—well, actually letters from an anonymous informant in New York, and actually documents that—the documents were, to summarize them, copies of the—what appeared to be the check registers from the two Dhiren Joshi's accounts that were opened by Mr. Parikh that were used to pay the premiums on the insurance policies.

They also included copies of what appear to be steno pages from a steno pad, each pad having a different—each page having information about one insurance company and covering all the insurance

companies that were involved in this case, and also a summary of the premiums that were paid on each insurance policy. Mr. Coffey does not know who sent him that information.

He was also sent originals of various applications, insurance applications to different companies in the name of Bankim, B–A–N–K–I–M, Mehta, M–E–H–T–A, with instructions written in the Gujarati language to someone else on how to fill these out, how to fill out all these applications in the name of Bankim Mehta, and the beneficiary of those was to be a Verjendra Patel who is a relative of Mr. Patel's, and the address that was used was Mr. Patel's former address.

We have a handwriting examiner who is going to testify tomorrow that he has made a comparison and he has determined that Mr. Patel wrote all—wrote the—at least portions of the Bankim Mehta applications.

Now, we only had available the xerox copies of the other documents that I referred to, the check register, the steno pad notes, the summary, but he will say that he is as sure as—my understanding of what he will say is that he is as sure as he can be given the fact that these are copies and not originals that these were written by Vasant Patel, and I believe his testimony will be that Mr. Patel most probably wrote these documents.

I do not intend with Mr. Coffey to get into any hearsay aspects of what the informant told him because I realize that that would be inadmissible. All I intend to do with respect to those documents with Mr. Coffey is just have him identify them as being received from an anonymous informant in an envelope from New York. And then tomorrow have the handwriting—and not go into the contents of them and tomorrow have the handwriting examiner testify that they were written by Mr. Patel.

The defense counsel objected to the admission of the anonymous documents arguing that their probative value would be outweighed by their prejudicial effect. He requested twenty-four hours to raise additional grounds for objection. The court found that the government was only asking to identify the documents through Coffey without going into their content, and allowed the government to proceed.

The government called Coffey as a witness, and he testified on direct examination concerning the anonymous documents:

Q. During the course of your investigation did you receive some documents in the mail from an unknown source?

A. Yes, I did.

Q. And did you retain the envelopes that—or envelope that that document —that those documents came in?

A. Yes, I did.

Q. Do you recall when the documents were received?

A. The first was received on February 19th, 1986. The second package arrived approximately April 7th. I'm not sure of the precise date on the second one but it was approximately that time and my records would show what date it was received.

Q. Was there any return name—was there any return address or name given from the person who sent you the documents?

A. No.

Q. Was there a postmark on the envelopes?

A. Yes.

Q. And what was that?

A. It indicated New York.

Q. Without going into the contents of these documents, let me show you, and each of these is going to be preceded by the word anonymous: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 48, 51, which is a two-page document, 52, 53, 60 and 61.

Were all of those documents the documents that you received from an anonymous source?

A. Yes, these are those documents.

On cross examination, Patel's lawyer asked Coffey if he retained the envelope that the anonymous exhibits came in and if

he could make it available. Coffey answered affirmatively to both questions. On redirect examination, the government had Coffey identify the envelopes in which the anonymous documents had come. On recross examination, Patel's lawyer questioned Coffey about the way in which the envelopes were addressed. He then asked Coffey if any note or letter was in the envelopes. When Coffey answered affirmatively, defense counsel asked Coffey what the note said. Coffey answered:

Well, the first note indicated that the person who was transmitting the letter knew Mr. Patel and Mr. Parikh, was familiar with the fact that they had put together a scheme to—a scheme to defraud the insurance companies and that having seen what had occurred and what had come up to this point he wished to proffer his information, that he only had information to provide, he provided some background information concerning them.

In fact, he indicated at that point that —and that would be with the earlier letter that was sent on February 12th, he indicated that because they were preparing—or because they were under investigation they decided they would attempt to leave the country and that they were in the process of getting together all their effects in order to flee the country before they could be prosecuted.

It also identified—provided me with a list of all of the insurance companies that were involved, including one additional one which at that point I was not aware of, although in looking through the records subsequently I could have been aware of it. That was the first time that I recognized it was in that letter. That being the Standard Security Insurance Company of New York.

That basically was the—the content of the first letter, providing background information and indicating that—provided me with a number of sources, people who I could contact who had knowledge who were involved in helping and assisting them in connection with the scheme.

The jury convicted Parikh and Patel of all counts of mail fraud and conspiracy. The district court sentenced both Parikh and Patel to forty-three years in prison and ordered them each to pay fines in the total amount of $50,000. In addition, the district court ordered Parikh and Patel to pay restitution to the various defrauded insurance companies, jointly and severally, in the total amount of $1,112,136.80.[1] After filing a notice of appeal with this court, Parikh and Patel filed a motion to stay payment of fine and payment of restitution pending appeal. Under Fed.R.Crim.P. 38(c), the district court unconditionally granted their motions to stay payment of fine pending appeal and granted their motions to stay payment of restitution pending appeal with two conditions. The two conditions were: (1) that they pay into the registry of the court the amount of three hundred eighty-five thousand nine hundred twenty-four and 81/100 ($385,924.81), all of said funds presently in their possession and subject to their control and account under oath as to the disposition and/or whereabouts of said funds not paid into court, and (2) respond to claimants' interrogatories.[2]

## ISSUES

Parikh and Patel raise the following issues on appeal:

(1) whether Fed.R.Crim.P. 16 required the government to disclose the letters which the government did not intend to offer into evidence;

---

**1.** Several banks holding disputed proceeds from the several life insurance policies filed interpleader actions and deposited $726,211.99 into the registry of the district court after receiving notice of suspected insurance fraud.

**2.** Claimant insurance companies requested that the court issue a stay conditional on defendants' depositing in the registry of the court an amount equal to the difference between the total restitution ordered and the amount already accounted for subject to the collateral interpleader actions ($1,112,136.80 minus $726,211.99 equals $385,924.81). Claimants also requested the court to impose a second condition on the stay, that defendants be ordered to answer interrogatories seeking information concerning the whereabouts of the $100,000.00 claimed to have been transferred to an Indian bank.

(2) whether reversible error occurred when the government's witness responded to defense counsel's inquiry regarding the contents of a letter and two telephone calls from the anonymous informant;

(3) whether the responsive testimony of the government's witness during re-cross examination concerning the contents of a letter from the anonymous informant violated the defendants' rights to confrontation;

(4) whether the district court abused its discretion in failing to require the government to divulge the telephone number of the anonymous informant;

(5) whether the district court erred in admitting documentary evidence provided by the anonymous informant which Patel admitted writing and to which Parikh and Patel did not object;

(6) whether the prosecutor, in closing argument, committed reversible error when she identified the anonymous informant as Patel's relative;

(7) whether the district court erred by relying on the $433,000 figure in the government's sentencing memorandum;

(8) whether a claimant seeking restitution has standing to directly challenge a motion for stay of fine and restitution filed in a criminal proceeding;

(9) whether the district court abused its discretion by granting a conditional stay of restitution; and

(10) whether the district court committed plain error by compelling Parikh and Patel to answer interrogatories filed in a civil action.

## DISCUSSION

Through a multitude of issues, Parikh and Patel's contentions attack the information provided by the anonymous informant and challenge the district court's conditional stay of restitution pending appeal. The government asserts that the information provided by the anonymous informant was properly admitted at the trial, and that the issues raised in the separate consolidated Appeal No. 87-8463 involving the condition-

al stay of restitution pending appeal are now moot.

### A. THE NONDISCLOSURE ISSUE

Fed.R.Crim.P. 16(a)(1)(C) provides:

Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

Parikh and Patel contend that the government's nondisclosure of the letters Coffey received from the anonymous informant and the telephone conversations Coffey had with the anonymous informant violated Fed.R.Crim.P. 16(a)(1)(D). They argue that the nondisclosure of the letters adversely affected their defense strategy because these documents were "material to the preparation" of their defense.

The government contends that the anonymous letters were not disclosed because it did not intend to use the letters at trial. The government asserts that it provided those documents which it intended to use as evidence in chief at the trial and refutes the argument that the letters were material to the preparation of the defense as unsupported by the record. The government emphasizes that neither Parikh nor Patel raised this alleged rule 16 violation during the trial.

■ We review this issue under the plain error doctrine of Fed.R.Crim.P. 52(b). This doctrine authorizes this court to correct only particularly egregious errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings. *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985). We hold that the nondisclosure of these letters from an anonymous informant, which were not intended to be offered into evidence by

the government, does not violate Fed.R. Crim.P. 16(a)(1)(C) under the circumstances of this case. Accordingly, we find no plain error.

## B. INVITED ERROR

1. Parikh and Patel contend that the government witness's statements on recross examination in response to the defense counsel's questions were hearsay; therefore, their admission into evidence was reversible error. Parikh and Patel argue that the "government laid a trap for the unwary defendants" and introduced "inadmissible hearsay through unwitting defense counsel who innocently elicited the hearsay testimony." Parikh and Patel further contend that other aspects of the witness's testimony, also introduced during recross examination, were inadmissible hearsay.

The government contends that the challenged testimony is not reversible hearsay because the defense counsel knowingly elicited it from the government witness. The government argues that defense counsel pressed Agent Coffey about the contents of the letter at their own risk. Also, the government again emphasizes that Parikh and Patel never objected to the witness's answer, never moved for a mistrial, and never requested a cautionary instruction.

We hold that the admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates "invited error." Defense counsel had the ability to limit recross so that the testimony would not have been given. Defense counsel effectively caused the injury about which he now complains by questioning the witness about the contents of the letter. This invited error constitutes neither plain nor reversible error. *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985); Fed.R.Crim.P. 52(b).

2. Parikh and Patel contend that Coffey's references to the notes and statements of the anonymous informant violated their sixth amendment rights to confront the anonymous informant. They argue that the trial court effectively denied them the basis upon which they could evaluate the credibility of the anonymous informant. Parikh and Patel contend that the government's failure to divulge the anonymous informant's telephone number further violated their sixth amendment rights.

The government contends that the confrontation clause of the sixth amendment is not implicated where defense counsel knowingly elicits out of court declarations as a part of the defense. The government argues that the out of court declarations were not hearsay, as they were not offered for the truth of the matters asserted. Fed.R.Evid. 801(c). The government asserts that Parikh's and Patel's rights of confrontation were waived when defense counsel elicited the evidence and failed to object to the alleged hearsay.

The Supreme Court has stated:

[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [Footnote omitted.]

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). This court has analyzed the confrontation clause inquiry in *Hutchins v. Wainwright,* 715 F.2d 512 (11th Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984), and found a clear violation of the confrontation clause when the *prosecutor* urged the jury in final argument to draw inferences from hearsay elicited from investigating officers. In this case, the defense counsel elicited hearsay from the government's witness. The confrontation clause is not implicated where the defendant seeks to introduce hearsay declarations as part of his defense. *See United States v. DiMaria,* 727 F.2d 265, 272 n. 6 (2d Cir.1984). Accordingly, we hold that the defense-elicited testimony of the govern-

ment's witness concerning the contents of the letter from the anonymous informant did not violate Parikh's nor Patel's sixth amendment confrontation clause rights.

3. Parikh and Patel contend that the trial court committed error by denying their motion for the disclosure of the anonymous informant's telephone number. At trial, the government's witness revealed that he possessed the anonymous informant's telephone number. Parikh and Patel moved for production of the telephone number so that they could attempt to gain access to the informant and the originals of the documents the informant furnished. The trial judge met *in camera* with the prosecutor, and as a result of the meeting, the court refused to disclose the informant's telephone number or to hold any further *in camera* hearings pertaining to the informant. The transcript of the meeting between the prosecutor and the judge was transcribed and sealed; it is part of the record on appeal. Parikh and Patel argue that the district court abused its discretion in refusing to order the disclosure of the informant's telephone number.

The government contends that the anonymous writer of the letters was a classic tipster, i.e. one who conveys information but who does not witness or participate in the offense. The government argues that it had no obligation to disclose the informant's telephone number, a piece of information which could have led to the disclosure of the identity of the informant.

The Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) is the leading case on the scope of the government privilege to withhold the identity of informants. In that case, the Court ordered the disclosure of the identity of an informant who was an active participant in an illegal drug transaction. The Court outlined the balancing test for determining whether the disclosure of a confidential informant is proper:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's

right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–29.

In *United States v. Varella*, 692 F.2d 1352, 1355–56 (11th Cir.1982), *cert. denied*, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983), this court analyzed the balance enunciated in *Roviaro* and determined:

> [A] factor of primary importance in striking that balance is the degree of participation exercised by the informant. When the confidential informant is not 'an active participant in the criminal activity, but only a tipster, disclosure of the identity is not required....' 'Thus, even though an informant is present during a critical transaction, the fact that he does not actively participate favors nondisclosure.' Conversely, where an informer has played a crucial role in the alleged criminal transaction, then disclosure and production of the informer are required to ensure a fair trial. And, in cases where there exists a slight possibility that the defendant might benefit from disclosure, although the informant is more than a mere tipster in the criminal transaction, the law favors nondisclosure where the government can demonstrate a compelling need to protect its informer. [Citations omitted.]

■ In this case, the district court held an *in camera* hearing with the prosecutor and refused to disclose the informant's telephone number. The court went further and refused to conduct any future *in camera* hearings pertaining to the identity of the informant. Given the particular circumstances of this case, the crimes charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors, we hold that the trial court did not abuse its discretion in denying the disclosure of the anonymous informant's telephone number. We have reviewed the *in camera* transcript and find

the district court's nondisclosure of the telephone number proper.

4. At trial, Patel's counsel stipulated that several documents submitted by the anonymous informant were in fact written by Patel, as the government contended. Parikh and Patel now contend that the district court erred in allowing the admission of the anonymous documents without questioning the informant during an *in camera* hearing as to how the documents were obtained.

The government contends that no error occurred in admitting into evidence relevant documents admittedly written by Patel to which Parikh and Patel specifically stated that they had no objections. The government argues that no objection was made to the admittance of this evidence, and that Parikh and Patel agreed to the admission of the documents, therefore, no error occurred.

■ Fed.R.Evid. 103 provides:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

   (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; . . . .

We hold that the trial court committed no error in admitting into evidence relevant documents admittedly written by Patel and to which no objection was made. Substantial rights were not affected.

5. In her closing argument, the prosecutor referred to the anonymous informant as a relative of Patel's. Parikh and Patel contend that this error was extremely prejudicial and without any basis in the record. They argue that the prosecutor effectively bolstered the credibility of the informant's statements, and that the prosecutor's statement constituted reversible error. The government again emphasizes that no objection was made at trial, and that this error does not meet the reversible error standard.

■ The test in this circuit in assessing the prosecutor's comments for reversible error is "(1) whether the remarks were improper and (2) whether they prejudicially affected substantive rights of the defendants." *United States v. Rojas,* 731 F.2d 707, 710 (11th Cir.1984) (quoting *United States v. Vera,* 701 F.2d 1349, 1361 (11th Cir.1983)). In reviewing the entire record, we hold that the prosecutor's statement did not prejudicially affect substantive rights. Accordingly, the district court did not commit reversible error.

## C. THE SENTENCING ISSUE

Parikh and Patel contend that the trial court failed to comply with Fed.R.Crim.P. 32(c)(3)(D) and sentenced them on the basis of inaccurate information. They argue that the trial court failed to make written or oral findings to the disputed amount of money that remained in their possession as a result of the insurance scheme, but rather relied upon the government's unproven figures in fashioning their sentences. At trial, Parikh and Patel moved pursuant to Fed.R.Crim.P. 32(c)(3)(D) for the court to resolve the dispute regarding the amount of money remaining in their control because it would be an important factor in the determination of appropriate sentences. The trial court denied the motion and sentenced both Parikh and Patel to forty-three years imprisonment. Parikh and Patel argue that the trial court failed to comply with the rule because it neither made a written finding as to the controverted matter nor determined that no such finding was necessary.

The government argues that rule 32(c)(3)(D) is triggered only when an allegation of a factual inaccuracy in the presentence investigation report is alleged. No allegation of factual inaccuracy as to the missing $433,000 appeared in this case. Therefore, the trial court did not violate the dictates of rule 32(c)(3)(D).

■ A review of the record on appeal indicates that Parikh and Patel did not allege a factual inaccuracy as to the govern-

ment's assertion that approximately $433,-000 had not been accounted for as a result of the alleged insurance fraud. Accordingly, we find no error in the district court's reliance on the $433,000 figure in the government's sentencing memorandum.

### D. CONDITIONAL STAY OF RESTITUTION

Parikh and Patel contend that the district court erred in considering a brief filed on behalf of three insurance companies with claims of restitution. They argue that these insurance companies had no standing to challenge their motion to stay fines and restitution pending appeal; that the district court abused its discretion by requiring them to pay the full amount of restitution into the registry of the court as a condition for a stay of restitution pending appeal; and that the district court committed error in requiring that they answer interrogatories filed in a civil case as a condition to granting their stay of restitution. The government contends that all of these issues are moot.

■ Because we affirm Parikh's and Patel's convictions, restitution is due, and no basis is shown for a stay of the restitution order. Therefore, the issues raised in Appeal No. 87–8463 surrounding the conditional stay of restitution issues are now moot.[3] The district court's convictions and orders are affirmed.

AFFIRMED.

---

3. Appeal No. 87–8463 is dismissed.