FILED
United States Court of Appeals
Tenth Circuit

**August 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

RICHARD ANTHONY MCKENZIE,

    Defendant - Appellant.

No. 13-2018
(D.C. No. 1:08-CR-01669-JB-1)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLMES,** and **MATHESON**, Circuit Judges.

Richard McKenzie argues that his federal prosecution and conviction for

possession with intent to distribute 500 or more grams of cocaine violated his Fourth

Amendment right against unreasonable searches and seizures and his Sixth Amendment

Confrontation Clause rights. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]After examining Appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Factual Background*

The parties are familiar with the facts of this case, which the district court presented in its April 13, 2010 order denying Mr. McKenzie's motion to suppress evidence. *See United States v. McKenzie*, No. 08-CR-01669-JB, 2010 WL 1795173 (D.N.M. Apr. 13, 2010). We recite only the background necessary to frame the issues on appeal.

An Amtrak employee faxed to the United States Drug Enforcement Administration ("DEA") a Passenger Named Record ("PNR") for Richard McKenzie. The DEA has trained Amtrak ticketing agents to identify passengers with characteristics that match the profiles of drug couriers. The PNR here indicated that (1) Mr. McKenzie was traveling one-way from Flagstaff, Arizona to New York City, (2) the ticket was purchased by a credit card in the name of a third party, and (3) the ticket was for Amtrak's most expensive sleeper accommodation.

After reviewing the PNR on July 7, 2009, DEA Special Agent Mark Hyland and Task Force Officer Stephen Suprenant de Garcia met the train at the station in Albuquerque, New Mexico. They obtained a description of Mr. McKenzie from an attendant and found him smoking outside his sleeper car. Agent Hyland identified himself as a law enforcement officer and asked Mr. McKenzie if they could speak. Mr. McKenzie agreed, and Agent Hyland asked to see his ticket.

The agents followed Mr. McKenzie to his room, where he showed his ticket to the

agents, who promptly returned it. After further questions about Mr. McKenzie's trip, he agreed to let Agent Hyland into his room and to search his luggage. When Agent Hyland asked to search inside three unusually heavy boxes of cereal found inside Mr. McKenzie's bags, Mr. McKenzie refused. Mr. McKenzie then asked if he could go back outside to smoke another cigarette.

Agent Hyland followed Mr. McKenzie out of the train and asked to see his driver's license to confirm his identity. Agent Hyland then told Mr. McKenzie that he was going to bring a certified canine to sniff the cereal boxes, but Mr. McKenzie told him that he did not consent to the dog sniff and that he did not want a dog in his space. Mr. McKenzie also refused to bring the cereal boxes to be sniffed on the platform. When the agents asked if anyone could confirm his story about his trip, Mr. McKenzie called a friend. That person initially contradicted Mr. McKenzie's story and only corroborated it after some coaching from Mr. McKenzie. The agents then told him that he was going to be detained.

Mr. McKenzie evaded Agent Hyland's attempts to handcuff him, ran onto the train, and locked the door to his room. After a few minutes, an Amtrak employee told Agent Hyland and the conductor, who were outside Mr. McKenzie's door, that someone had removed a window from the train and was limping away. Agent Hyland stayed on the train to open the door to Mr. McKenzie's room and secure the cereal boxes while Officer Garcia apprehended Mr. McKenzie. After Officer Garcia's dog alerted to the presence of drugs in the cereal boxes, Agent Hyland obtained a warrant to search the

boxes.  The search produced approximately 7.6 pounds of cocaine.

## B.  *Procedural Background*

1.  **Indictment**

On July 22, 2008, a grand jury indicted Mr. McKenzie for possession with intent

to distribute 500 or more grams of a substance containing cocaine, in violation of 21

U.S.C. §§ 841(a)(1) and (b)(1)(B).

2.  **January 28, 2010 Order Denying Motion to Compel Production of Witnesses and Documents**

On January 28, 2010, the district court denied Mr. McKenzie's discovery motion

to compel production of witnesses and documents concerning the identity of the Amtrak

agent who sent the PNR to the DEA.  The court declined to decide whether the initial

encounter between Mr. McKenzie and the agents was consensual or an investigatory stop

because the motion would be denied under either characterization.

The district court reasoned as follows.  First, if the encounter were consensual,

there was no need to cross-examine the ticket agent to determine reasonableness because

consensual encounters do not require reasonable suspicion.  Second, disclosure of the

ticket agent's identity was not necessary even if there were an investigatory stop because

(1) the ticket agent was not a de facto law enforcement officer who was involved in his

arrest, and (2) even if the Amtrak agent were a confidential informant, "'the informant

cannot aid the defense,' because the informant merely conveyed information that is now

available through the investigating DEA officers[. Therefore], 'the government's interest

4

in keeping secret the informant's identity [would] prevail over the defendant's asserted right of disclosure.'" *United States v. McKenzie*, No. 08-CR-1669-JB, Order at *7 (D.N.M. January 28, 2010) (quoting *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999)).

3. **April 13, 2010 Order Denying Motion To Suppress Luggage Evidence due to Lack of Reasonable Suspicion To Detain**

On April 13, 2010, the district court addressed whether it should suppress the evidence from Mr. McKenzie's luggage. We understand Mr. McKenzie to have argued that he was illegally detained when the agents approached him because they lacked reasonable suspicion before speaking with him. Everything that followed was, therefore, he contends, the fruit of a poisonous tree. The district court denied this argument because the initial encounter and search of the luggage was consensual.

4. **April 8, 2011 Order Denying Motion To Suppress Luggage Evidence due to Illegal Handling of the PNR**

On April 8, 2011, the district court denied Mr. McKenzie's motion to suppress the evidence seized from his luggage. Mr. McKenzie had argued that Amtrak's disclosure of the PNR to the DEA violated his Fourth Amendment rights. The district court noted Tenth Circuit authority holding that Amtrak's disclosure of a PNR is not a violation of a defendant's Fourth Amendment rights, *United States v. Jackson*, 381 F.3d 984, 989-90 (10th Cir. 2004), and holding that a defendant has no standing to challenge the Government's seizure of a PNR because PNRs are business records in which passengers have no reasonable expectation of privacy, *United States v. Moffett*, 84 F.3d 1291, 1293

5

(10th Cir. 1996).[1]

5. **April 8, 2011 Order Granting Government's In Limine Motion**

On April 8, 2011, the district court decided the Government's motion in limine to prohibit Mr. McKenzie from raising the confidential informant and PNR issues at trial and from calling witnesses to testify about those issues. Because the court had already held that the source of the PNR was irrelevant and that Agent Hyland had not illegally seized the PNR, it granted the Government's motion.

6. **Trial, Conviction, and Sentencing**

A jury trial was held on April 11 and 12, 2011. After the direct examination of Agent Hyland, one of the jurors sent a question to the court, asking why the agents had approached Mr. McKenzie. The court told the parties that it would leave to them how they wanted to handle the juror's question. On cross-examination, Mr. McKenzie's counsel asked Agent Hyland why he went to the train to look for him. After the Government objected, Mr. McKenzie conceded that he wanted to ask questions about the Amtrak ticket agent and the PNR. The court allowed Mr. McKenzie's question. Mr. McKenzie also told the court that it need not do anything about the jury's question at that point, but could give a limiting instruction later. Mr. McKenzie then elicited from Agent

---

[1] The court also declined Mr. McKenzie's request that the court reconsider its February 10, 2011 order that denied his motion to suppress the evidence against him because of discrepancies in Agent Hyland's testimony about how he received the PNR from the Amtrak ticketing agent. The court reaffirmed that discrepancies on irrelevant details are not sufficient to amount to a Fourth Amendment violation.

Hyland that he sought to find Mr. McKenzie based on information in a PNR received from a confidential informant. On redirect, the Government asked Agent Hyland questions to clarify the information in the PNR.

On April 12, 2011, the jury found Mr. McKenzie guilty. On September 7, 2012, the district court sentenced Mr. McKenzie to 262 months in prison and four years of supervised release. The district court entered judgment on January 31, 2013.

On February 4, 2013, Mr. McKenzie filed a timely notice of appeal.

## II. **DISCUSSION**

On appeal, Mr. McKenzie argues that (1) the district court violated his Fourth Amendment right against unreasonable search and seizure by denying his request for the Amtrak agent's identity and the PNR; and (2) the district court violated his right under the Confrontation Clause to confront and cross-examine the Amtrak agent. We address these issues in turn.

### A. *Alleged Fourth Amendment Violation*

Mr. McKenzie argues as follows:

> [T]he [Amtrak agent] did not provide sufficient information to Agent Hyland for him to be able to develop reasonable suspicion to approach [Mr.] McKenzie. Since Agent Hyland could not identify which alleged Amtrak employee provided the information, there can be no indicia of reliability from the [Amtrak agent]. In addition, the tip itself was vague and provided no information that Agent Hyland could use to predict future behavior of [Mr.] McKenzie to be able to accurately corroborate the vague, bare-bones data collected by the alleged [confidential informant (Amtrak agent)]. Based on the totality of the circumstances, there was not

7

enough information to support a finding of reasonable suspicion for Agent Hyland to approach [Mr.] McKenzie and subsequently arrest him.

Aplt. Br. at 6-7.

There is no merit to Mr. McKenzie's Fourth Amendment arguments. For substantially the same reasons as the district court stated, we conclude that the initial encounter between the law enforcement officers and Mr. McKenzie was consensual. The officers therefore did not need reasonable suspicion to speak with Mr. McKenzie.

## B. *Confrontation Clause Violation*

We "review[] de novo the legal question of whether evidence at trial violates the Confrontation Clause." *United States v. Mendez*, 514 F.3d 1035, 1043 (10th Cir. 2008) (citation omitted).

Mr. McKenzie argues that the district court erred (1) in ruling in limine to exclude evidence as to the identity of the Amtrak ticket agent and then (2) in allowing testimony at trial about the Amtrak ticket agent and the PNR. Mr. McKenzie has failed to adequately explain how the first argument is a Confrontation clause issue. Regardless, we conclude that the district court did not abuse its discretion in granting the motion in limine to exclude evidence and testimony as to the Amtrak ticket agent and the PNR.[2]

As to the second argument, because Mr. McKenzie elicited through his cross-examination of Agent Hyland the information he complains was admitted in violation of

_____

[2] We "review[] a district court's . . . rulings on motions in limine for abuse of discretion." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013).

8

the Confrontation Clause, there was no Confrontation Clause violation. *See United States v. Parikh*, 858 F.2d 688, 695 (11th Cir. 1988) ("The confrontation clause is not implicated where the defendant seeks to introduce hearsay declarations as part of his defense.").[3]

## III. CONCLUSION

For the reasons stated above, we affirm the district court.

ENTERED FOR THE COURT

Scott M. Matheson, Jr.
Circuit Judge

---

[3] Mr. McKenzie correctly states in his brief that he introduced the testimony about why Agent Hyland was looking for him at page 181 of the trial transcript. He incorrectly ascribes the testimony at pages 183 and 189 as elicited by the Government.

We also note that we are alternatively "constrained to affirm" the district court's rulings on this issue because Mr. McKenzie failed to provide the relevant district court orders in his appendix. *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 910 (10th Cir. 2009); *see also Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1235 n.13 (10th Cir. 2007) (party may "unwittingly waiv[e] arguments" by failing to provide the documents necessary for appellate review, and we are not required to obtain the documents).