**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0933-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KEITH HARRIS,

    Defendant-Appellant.

_____

        Submitted February 12, 2018 — Decided August 15, 2018

        Before Judges Sabatino, Ostrer and Rose.

        On appeal from Superior Court of New Jersey,
        Law Division, Mercer County, Indictment No.
        14-10-1213.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Stefan Van Jura, Deputy Public
        Defender II, of counsel and on the brief).

        Angelo J. Onofri, Mercer County Prosecutor,
        attorney for respondent (Olivia M. Mills,
        Assistant Prosecutor, of counsel and on the
        briefs).

        Appellant filed a pro se supplemental brief.

PER CURIAM

Tried by a jury, defendant Keith Harris was convicted of second-degree bribery in official and political matters, N.J.S.A. 2C:27-2(c), and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(b)(1). His convictions arose out of a scheme to smuggle contraband tobacco into the New Jersey State Prison (NJSP) in Trenton. Defendant was acquitted by the jury of second-degree official misconduct, N.J.S.A. 2C:30-2. The court sentenced defendant to a five-year term of imprisonment with a five-year period of parole ineligibility on the bribery offense, concurrent with a three-year sentence for the financial facilitation offense.

Defendant principally argues on appeal that the court denied him his right of confrontation when a prosecution witness testified about information he received regarding defendant's guilt. As defense counsel invited the testimony, we reject the argument, as well as defendant's other points on appeal, and affirm.

I.

In the fall of 2013, defendant began work as a civilian institutional trade instructor at NJSP. He trained and monitored inmates in food preparation. Roughly eight months before he started, the Department of Corrections banned tobacco from the State's prison system. A black market emerged, as inmates were willing to pay a premium to obtain tobacco products.

To exploit the demand, then corrections officer Eric Dawson and inmate Mitchell West developed a scheme to smuggle tobacco into NJSP.  According to their plan, one of West's non-inmate compatriots supplied Dawson with the tobacco outside the prison, and paid him for his efforts.  Dawson secreted the tobacco in Ziploc bags to avoid detection as he entered the prison for his shift.  Dawson then delivered the tobacco to West, who sold it to inmates.

Dawson was arrested on March 14, 2014, and agreed to cooperate with law enforcement.  He admitted he received a Western Union money order to purchase tobacco and pay himself.  The money order listed Lorenzo Blakeney as the sender.  Department of Corrections Senior Investigator Raphael Dolce learned that Blakeney was an approved visitor for inmate Roosevelt Withers.  Blakeney was also on Withers' authorized phone list.

Armed with a warrant, Dolce scrutinized Blakeney's call records.  He also monitored Withers' calls from prison.  That led Dolce to discover a woman outside prison, Tatiana Upshaw.  Dolce later observed Upshaw and defendant leave her residence.  After identifying defendant as a civilian prison employee, Dolce considered him a person of interest in his investigation.

Blakeney was arrested roughly two months after Dawson. Blakeney also cooperated with law enforcement.  He testified he

assisted defendant and Withers in the tobacco smuggling scheme. Blakeney testified that after Dawson was arrested, defendant was recruited to take his place to smuggle tobacco into the prison.

Dolce's testimony at trial lies at the heart of defendant's appeal. On cross-examination, defense counsel elicited that Dolce and the prosecutor had reviewed materials in advance of trial. Yet, Dolce insisted that he independently recalled the case. Counsel specifically asked, "Can you recall which you would have had your own recollection of, based on all of the search warrants, all of the vehicles, all of the houses that you went through, all of the surveillance, all of the tapes, all of the statements?"

Dolce responded, "Can I give a line-by-line? No, I can't, but in general, certain Defendants that we arrested provided statements, which implicated other people. Certain Defendants identified photographs of other Defendants, so those types of events are more in-depth[.]"

Still not satisfied, defense counsel asked which encounters stood out.[1] Dolce answered, "Not so much that they stood out. It's just in general, if we have a Defendant who chose not to talk to us, we didn't spend as much time with that person, whereas if somebody that we arrested provided a statement and that statement

_____

[1] The transcript states, "Are what stand out?"

implicated other co-Defendants.  And that information was used to corroborate the overall conspiracy, which was to corrupt staff to smuggle items in, those types . . . ."

Defense counsel then interjected, apparently to ask another question: "Were, -- excuse me, Officer.  I don't mean to interrupt you."  The trial judge then cautioned both attorneys that they could not interrupt witnesses, except to interpose an objection:

> [Defense counsel], I'm going to tell everybody now on both sides; a witness cannot be interrupted while they're providing their testimony . . .  I don't tolerate that in any of my trials . . . .  Okay so I'm going to ask the witness to continue with his answer. . . . If there's an objection that you have or [the prosecutor] has to the answer, I'll deal with that objection. . . .  I have to be able to get it out to be able to make my decisions as to what I need to do; okay?

Defense counsel did not offer an objection, and Dolce continued:

> Okay.  So what ended up happening is, in talking with all of the people that we either arrested or [against whom we] executed search warrants, those persons who provided information, which corroborated the scheme as we understood it, which was to smuggle contraband in through corrupt staff, we would spend more time with them.
>
> They were able to provide us additional information.  They were able to authenticate phone conversations.
>
> They were able to sit there and to tell us, yes, this is the person I actually paid the

money to or this is the person that I gave the contraband items, such as tobacco, to.

And they were able to authenticate that the items were then subsequently [smuggled] into the prison because the co-defendant inmates, those that were the conspirators on the inside, had advised them that they had in fact received the items, whatever they happened to be.

Dolce then referred to an unnamed officer who smuggled in items, presumably Dawson, and to defendant. Defense counsel would later assert that Dolce meant that defendant was a smuggler, too. Dolce stated:

> <u>Because in this particular matter, there was an officer [who] smuggled in items, as well as the defendant</u>, so what ended up happening is, we had a whole lot of information coming in.
>
> And when we spent time with various people, if one person was able to sit there and to provide information that corroborated the statements of others, that information was then correlated against, perhaps, phone conversations, which we knew occurred.
>
> Or if we had received receipts from Western Union, they told us that, I received money from people I didn't know and then I went and, at the request of an inmate, I then took that money and I transmitted it to somebody else at the request of the inmate.
>
> So we would spend more time with that person and as a result of that, I would remember those types of conversations, whereas somebody who didn't have a great role in it but nonetheless was involved because perhaps they laundered monies, I might not remember all of that.

6

> Or we searched a vehicle during a search
> warrant and we didn't recover anything in that
> vehicle, which was relevant to that
> investigation; maybe I don't remember that
> specific thing.

> [(Emphasis added).]

Defense counsel then requested a sidebar, at which he objected

that Dolce had asserted defendant carried tobacco into the prison,

and the record did not support the claim:

> Your Honor, I would move to strike the
> witness, his answer, and to have him barred
> from the trial at this time because he just
> made a statement to the jury that there is
> absolutely no evidence in the record, in the
> discovery that my client brought material into
> the jail.[2]

> And that is an entirely misleading and
> prejudicial comment when there's absolutely,
> one; no foundation but, two: no evidence
> provided by the State at all in any capacity.

Notably, defense counsel did not object to Dolce's repeated

references to hearsay statements from co-defendants and other

witnesses, nor did he object that Dolce's answer was a narrative.

The prosecutor responded that Dolce did not express his own

opinion of defendant's guilt:

> I think there's certainly the inferences to
> be made that [defendant] moved tobacco into

---

[2] We surmise that defense counsel meant to say that "he just made a statement to the jury, but there is absolutely no evidence in the record, or in the discovery that my client brought material into the jail . . . ."

A-0933-16T3

the jail. I didn't hear Investigator Dolce say anything to the extent that this particular Defendant smuggled in anything other than tobacco.

He said there were other individuals who did and Eric Dawson testified yesterday that he smuggled in other items.

So to the extent the Court wants to issue a cautionary instruction, that may be appropriate but I don't see any reason to bar Investigator Dolce from the trial or strike all of his testimony.

The judge was not inclined to provide a cautionary instruction:

Well, what's the cautionary instruction you suggest I would issue? Because the testimony came, the testimony he presented and what's been presented to me is that it wasn't [defendant] involved in this. There was a number of different people involved. That clearly came out.

I didn't hear him implying that it was [defendant] specifically doing this or that. He's providing an explanation, based on the question that you asked, as to why he recalls certain things versus others.

Defense counsel reiterated his interpretation of Dolce's testimony, and, after an exchange with the court, interposed the objection that Dolce's answer was non-responsive. The judge was unpersuaded, because the answer responded to counsel's broad question. The judge also noted that counsel did not object on the grounds the answer was a narrative.

A-0933-16T3

[Defense Counsel]: But, Judge, he specifically said that others and this Defendant brought contraband, tobacco, into the jail and there is no evidence of that.

And I don't even believe his answer is responsive to my question.

The Court: Is there an objection then that the answer is non-responsive?

[Defense Counsel]: Yes, Your Honor, but more than that, this; I attempted to interrupt him and Your Honor instructed me to allow him to go on . . .

The Court: Because that's the problem. You can, if you want a specific answer, than you have to frame the question, as you know. . . . You have to frame the question in the way to elicit the answer. If the witness doesn't, then it's either non-responsive or the answer is a narrative . . . [Y]ou went on to ask him . . . how . . . do you . . . remember certain things more than others . . . that's what was behind your question. So he gave you the answer that he gave you and he included a lot more. It just opened the door . . . for him to be able to respond the way he did.

The State also relied on the testimony of other participants in the smuggling scheme. Dawson testified about his participation. Blakeney and Withers directly incriminated defendant. Blakeney testified he came into contact with defendant though Withers, who gave Blakeney defendant's phone number. Blakeney explained that defendant did not want to deal with Western Union, to avoid the paper trail. In their first transaction, Blakeney gave defendant cash at a face-to-face meeting. Defendant then purchased the

A-0933-16T3

tobacco, while retaining a share of the money as his remuneration. Withers, the inmate, confirmed that defendant succeeded in buying the tobacco and smuggling it in.

The next transaction and meeting between defendant and Blakeney did not proceed as smoothly, because defendant had car problems. Defendant agreed to accept a Western Union payment.

Defendant testified on his own behalf and claimed that Blakeney's payments were gambling winnings. He explained that his mother and sister lived in Newark, where his sister tended bar at the local American Legion post. He testified that he met Blakeney there. Blakeney ran a sports betting pool, in which a participant could win $1000 or $2000 on a $1 or $2 bet.

Defendant testified that on December 22, 2013, he won $2,000 in the pool. To claim his winnings, Blakeney agreed to send $1,000 via Western Union and to give him $1,000 cash when they next saw each other in person. But, Blakeney sent defendant $1,100 through Western Union. Defendant claimed he went to the Western Union station in Newark that Blakeney used, to avoid paying a fee that would be charged if he obtained payment elsewhere. He insisted that his only contacts with Blakeney involved gambling. Defendant denied participating in smuggling tobacco into the prison.

Defendant also called character witnesses who corroborated defendant's claim that he bet on sports.

II.

Defendant raises the following issues for our consideration:

POINT I

THE CONVICTIONS MUST BE REVERSED BECAUSE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSERS WHEN THE STATE'S PRIMARY INVESTIGATOR WAS PERMITTED TO TESTIFY ABOUT INCULPATORY EXTRA-RECORD INFORMATION FROM A HOST OF UNKNOWN WITNESSES. U.S. Const. Amend VI; N.J. Const. Art. 1, Par. 10.

POINT II

THE BRIBERY CONVICTION MUST BE REVERSED BECAUSE THE JURY WAS ERRONEOUSLY PERMITTED TO RETURN A GUILTY VERDICT BASED ON A VIOLATION OF AN OFFICIAL DUTY WHEN NO SUCH DUTY EXISTED. (Not Raised Below).

In a separate pro se brief, defendant presents the following additional points:

POINT 1

INDICTMENT WAS DEFECTIVE BECAUSE INDICTMENT WAS NOT A CONCISE NOR DEFINITE WRITTEN STATEMENT, AND CHARGED DEFENDANT WITH AN ACT THAT WAS NOT A CRIME WITHIN TIME-FRAME ON FACE OF INDICTMENT. THUS, BY LEAVING TO INFERENCE ALLEGED PARTICULARS, INDICTMENT VIOLATED DEFENDANT'S RIGHTS UNDER 6TH & 14TH AMENDMENTS OF U.S. CONSTITUTION, AND ARTICLE 1, PARAGRAPHS 8, 9, 10 OF N.J. CONSTITUTION, ALONG WITH BOTH FEDERAL & STATE EX POST FACTO LAWS. THEREFORE CONVICTION MUST BE OVERTURNED.

POINT 2

CONVICTION ON COUNT 4, SHOULD BE MERGED WITH CONVICTION ON COUNT 3.

POINT 3

TRIAL COURT ERR[]ED WHEN IT ALLOWED USE OF <u>LIMITED</u> NUMBER OF RECORDED PHONE CONVERSATIONS WHICH PREJUDICED JURY AGAINST DEFENDANT IN VIOLATION OF DEFENDANT'S RIGHT TO A FAIR TRIAL GUARANTEED UNDER BOTH FEDERAL & STATE CONSTITUTIONS. THEREFORE CONVICTIONS MUST BE REVERSED AND NEW TRIAL ORDERED. (Emphasis supplied).

POINT 4

INEFFECTIVE ASSISTANCE OF COUNSEL. OVERALL PERFORMANCE OF COUNSEL REVEALS COUNSEL WAS NOT ACTING AS COUNSEL BUT HELPED PROSECUTION TO CONVICT DEFENDANT. THUS, COUNSEL'S REPRESENTATION WORKED TO DEFENDANT'S DISADVANTAGE, VIOLATING DEFENDANT'S RIGHTS UNDER 5TH, 6TH & 14TH AMENDMENT OF U.S. CONSTITUTION AND ARTICLE 1, PARAGRAPHS 8, 9, 10 OF N.J. CONSTITUTION. THEREFORE CONVICTION MUST BE OVERTURNED AND NEW TRIAL ORDERED.

III.

Only one point on appeal deserves extended discussion: the contention that Dolce's narrative on cross-examination violated defendant's constitutional right of confrontation. Relying on <u>State v. Branch</u>, 182 N.J. 338 (2005), and <u>State v. Bankston</u>, 63 N.J. 263 (1973), defendant contends that "where the testimony of a police officer suggests that a non-testifying witness has provided evidence of the defendant's guilt, that testimony is hearsay and violates a defendant's right to confrontation."

12

We review the trial court's evidentiary decisions for an abuse of discretion. State v. Scharf, 225 N.J. 547, 572 (2016). Thus, we shall not set aside the trial court's ruling absent a "clear error of judgment," or a "ruling so wide of the mark that a manifest denial of justice resulted." State v. Prall, 231 N.J. 567, 580 (2018) (citations omitted). However, even if we find an abuse of discretion "we must then determine whether any error found is harmless or requires reversal." Ibid.; see also R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . .").

The "'common thread'" of Bankston and Branch "is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant." Branch, 182 N.J. at 351. Additionally, "the hearsay rule is violated if the officer states or suggests that some other person provided information that linked the defendant to the crime." Ibid.

Dolce's testimony certainly suggested that non-testifying witnesses implicated defendant in the smuggling scheme. However, defendant invited this testimony by asking an open-ended question on cross-examination, and then failed to interpose a timely, well-

13                                                          A-0933-16T3

founded objection. Further, any error was harmless given the other evidence of defendant's guilt.

In response to defense counsel's open-ended question about what Dolce recalled of his investigation, Dolce explained that cooperating co-defendants stood out; they corroborated the overall conspiracy "to corrupt staff to smuggle items" into the prison; and they confirmed that the contraband entered the prison because "the coconspirators on the inside, had advised them that they had in fact received the items." Dolce testified "there was an officer that smuggled in items, <u>as well as the defendant</u>." (Emphasis added). Although the statement was arguably ambiguous, a listener could reasonably have understood Dolce to convey, based on what others told him, that defendant, as well as an officer, smuggled items into the prison.

However, in one significant respect, this case differs from <u>Bankston</u> or <u>Branch</u>. Here, defense counsel elicited Dolce's hearsay testimony. "Strategic decisions made by defense counsel will not present grounds for reversal on appeal." <u>State v. Buonadonna</u>, 122 N.J. 22, 44 (1991). The "invited error" doctrine "bar[s] a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error."

<u>N.J. Div of Youth and Family Servs. v. M.C. III</u>, 201 N.J. 328, 340 (2010).[3]

The doctrine has been applied where, as here, a defendant claims that an investigating officer's testimony violated his confrontation rights. In <u>State v. Kemp</u>, 195 N.J. 136, 154 (2008), the defendant argued that "'[t]he admission of specific hearsay evidence regarding other information inculpating [defendant] as a suspect denied him his right to . . . confrontation under both the United States and New Jersey Constitutions.'" The Court disagreed, explaining that "defense counsel specifically stated that the State could inquire as to the bases for Det. Gregory's knowledge, explaining that he saw 'no problem with that because I'm going to go into it because I think it's clearly coming in.'" <u>Id.</u> at 155. The Court relied on the invited error doctrine to hold that there was no violation of the Confrontation Clause. <u>Ibid.</u> Further, the Court explained that "all of the sources who led Det. Gregory to focus on defendant testified and were cross-examined at defendant's trial, thereby obviating defendant's Confrontation Clause claim." <u>Ibid.</u> Finally, the Court held that even if Det. Gregory's testimony implicated <u>Bankston</u>, "the totality of the

---

[3] Although the State did not expressly invoke the doctrine, it adverted to its principles by arguing that defendant elicited Dolce's answer and "opened the door" to a response about which he now complains.

circumstances . . . leads to the conclusion that the admission of Det. Gregory's testimony . . . was harmless." Id. at 156.

Federal courts agree there is no violation of the confrontation clause if the defendant elicits the offending testimony. In United States v. Parikh, 858 F.2d 688, 695 (11th Cir. 1988), "defense counsel elicited hearsay from the government's witness," which defendant claimed violated his confrontation rights. The court held, "[T]he admission of out of court statements by a government witness, when responding to an inquiry by defense counsel, creates 'invited error.'" Ibid. As another federal court held, "If . . . defense counsel elicits testimony at trial, the defendant can't argue on appeal that the evidence was hearsay and should have been excluded." United States v. Driver, 242 F.3d 767, 770 (7th Cir. 2001); see also United States v. Cabrera, 201 F.3d 1243, 1248-49 (9th Cir. 2000).

Consistent with Kemp and persuasive federal authority, we conclude that, because counsel invited the hearsay testimony, defendant did not suffer a violation of his confrontation rights.

Furthermore, defense counsel did not interpose a timely, well-founded objection. "The right to confrontation may, of course, be waived, including by failure to object to the offending evidence." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 313 n.3 (2009). We find no basis in the record for defendant's argument

that the court precluded an objection. The record reflects that when defense counsel interrupted Dolce, he attempted to redirect the witness with another question, beginning with the word "Were." Counsel did not address the court, let alone articulate an objection that Dolce's answer included hearsay.

At sidebar, defense counsel first objected on discovery grounds, a point defendant does not pursue before us. Upon the court's suggestion, counsel endorsed an objection for non-responsiveness, but we discern no abuse of discretion in the court's negative response, given the breadth of the question. Notably, defendant never objected on the ground Dolce's answer was a narrative, although his open-ended question invited a narrative response. See Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 on N.J.R.E. 611 (2018) (stating that a trial judge "may properly seek to narrow questions which might evoke long narrative responses from the witness"); but see United States v. Pless, 982 F.2d 1118, 1123 (7th Cir. 1992) (noting that Fed. R. Evid. 611(a) authorizes judges to allow narrative testimony so long as it is pertinent and material).[4]

---

[4] Narrative answers may be problematic because a witness may utter something objectionable without giving counsel an opportunity to enter a prior objection. However, a well-founded objection may be raised after the narrative statement. See State v. Farrior, 14 N.J. Super. 555, 557-58 (App. Div. 1951).

In any event, any violation of defendant's confrontation right was harmless. "When evidence is admitted that contravenes not only the hearsay rule but also a constitutional right, an appellate court must determine whether the error impacted the verdict." State v. Weaver, 219 N.J. 131, 154 (2014). The State's case did not depend on Dolce's passing statement, in the midst of a lengthy narrative.

In particular, Dawson testified that in 2013 he began smuggling tobacco into the New Jersey State Prison. This alerted the jury of the overall scheme before it heard from Dolce. Dawson gave much more detailed testimony than the portion of Dolce's testimony about which defendant claims error. He explained exactly how he got the tobacco into the prison and he discussed the players involved, such as Blakeney.

Blakeney testified that defendant was involved in the conspiracy, specifically identifying him. He gave details of his dealings with defendant, the amount of money he gave, the number of times they met, and the purpose of the meetings. Although Blakeney had several prior felony convictions and was a cooperating co-defendant, which defense counsel elicited, the jury obviously found Blakeney more credible than defendant.

Circumstantial evidence also implicated defendant. The jury learned that Dolce traced numerous phone calls from Blakeney and

Withers to defendant's girlfriend, Upshaw. The Western Union receipt was also signed by defendant and Blakeney. In sum, we reject defendant's argument that he is entitled to a new trial on the ground that his Confrontation Clause rights were violated.

## IV.

The remaining issues warrant little or no discussion. The State and defendant agree that defendant's conviction for third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25(b)(1), should merge with his conviction for second-degree bribery, N.J.S.A. 2C:27-2(c). However, the merger does not affect the sentence. On the second-degree bribery count, the court imposed a five-year term, with a five-year period of parole ineligibility as mandated by statute, see N.J.S.A. 2C:43-6.5. Merger of the third-degree financial facilitation count, for which defendant received a lesser three-year concurrent term, does not affect defendant's aggregate sentence.

Defendant also argues that he was denied effective assistance of counsel as a result of defense counsel's cross-examination of Dolce. "Our Supreme Court has 'expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record.'" State v. Quixal, 431 N.J. Super. 502, 512 (App. Div. 2013) (quoting State v. Preciose, 129 N.J.

451, 460 (1992)). Therefore, we shall not pass on the potential success of such claim, but leave it for a petition for post-conviction relief if defendant chooses to file a future one.

Furthermore, we reject defendant's contention that the second-degree bribery conviction must be reversed because defendant, as a civilian instructor, did not breach an official duty. One of the elements of second-degree bribery in official or political matters is the acceptance of "any benefit as consideration for violation of an official duty of a public servant or party official." N.J.S.A. 2C:27-2(c). Defendant admitted at trial that smuggling tobacco would violate one of his official duties. The jury was free to conclude, based on the evidence presented, that defendant was dutibound to observe prison regulations, although he was not directly involved in their enforcement.

Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed as to the conviction. Remanded for correction of the judgment of conviction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0933-16T3